HENSCHELL, Appellant, vs. J. L. GATES LAND COMPANY, Respondent.

*April 5—May 2, 1911.*

*Real-estate brokers: Right to commissions: Sale not consummated.*

Where an agency agreement required the agents to procure a purchaser for lands ready, able, and willing to buy, at the price demanded by the principal, such quantities and upon such terms and conditions as should be agreed upon by the purchaser and the principal, performance thereof entitling the agents to commission is not shown by the fact that a contract looking to a sale of a certain quantity of the lands was signed by the principal and by one of two proposed purchasers, where such contract was not to become effective until the purchaser signing had satisfied himself as to the title and until his associate had signed, and in fact upon examination the purchaser was dissatisfied with the title and instructed his associate not to sign the contract, and the purchase was thereupon abandoned.

APPEAL from a judgment of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Affirmed.*

In May, 1900, James D. Wade of Duluth, Minnesota, informed James L. Gates of Milwaukee, Wisconsin, that he wanted a large body of cut-over lands. Mr. Gates told him that he had a large lot of such lands in Price county, Wisconsin, over 100,000 acres, and that if Wade would take the whole lot he would sell them to him at $1.25 per acre. Mr. Wade thereafter had considerable correspondence with Mr. Gates, was furnished with plats of Price county with the lands of which Mr. Gates desired to dispose checked thereon, and from time to time was informed by Mr. Gates of purchases of other lands which he claimed to have made. The price per acre, the terms of payment other than cash, and the quantity of lands which Mr. Gates was ready to sell to Mr. Wade varied from time to time.

Mr. Wade entered upon a campaign for the sale of the

lands, employed cruisers to examine them from the checkings furnished by Mr. Gates to determine their character, location, and value, procured the assistance of various persons, kept Mr. Gates informed of the situation, and gave him the names of the parties who were prospective purchasers of the lands and the amounts they would wish.

Among the parties working with Mr. Wade was A. C. McComb, a timber-land dealer and real-estate broker of Oshkosh, Wisconsin. Mr. McComb corresponded with Mr. Gates and Mr. Wade, received plats of Price county with the lands checked thereon which Mr. Gates wished to sell, and endeavored to find purchasers for parcels of the lands.

In July, 1900, the plaintiff, *Henschell,* then the northwestern land agent of the Wisconsin Central Railroad, upon inquiring from Mr. McComb for cheap cut-over lands, was informed that he had such lands in Price county at $2.25 per acre, of which $1.50 was to go to the owner and the balance would be divided between Mr. Wade, Mr. McComb, and the plaintiff. The checkings of the lands furnished to Mr. McComb by Mr. Gates and Mr. Wade were carefully copied by Mr. McComb and the plaintiff, and the plaintiff from his office in St. Paul, Minnesota, immediately advertised the lands for sale.

In response to the plaintiff's advertisements stating that he had about 75,000 acres of cheap lands in Price county for sale he received a visit from Mr. S. J. Johnson of Sioux City, Iowa. During the fall of that year Mr. Johnson and his associate, Mr. T. A. Thompson, had communications with the plaintiff, received checkings of the lands from him, made personal examinations of the lands, and thereafter Johnson sent plaintiff a letter stating that they had concluded to purchase the lands he had for sale in certain townships and requesting him to come to Sioux City to arrange the sale.

On December 6, 1900, the plaintiff, as agent of Mr. McComb, executed a land contract by which he agreed to convey

to Mr. Johnson and Mr. Thompson "Sixty-two hundred and forty (6,240) acres, more or less, in township 36, range 2 east.   Twenty-nine hundred and twenty (2,920) acres, more or less, in township 34, range 2 west.   Fifty-one hundred and sixty (5,160) acres, more or less, in township 34, range 1 west.   Twelve hundred and eighty (1,280) acres in township 35, range 1 west, as per checkings on plats hereto attached, duly verified by *R. L. Henschell,* Agent," all located in Price county.   The contract provides for payments of cash, for mortgages to secure the balance of the purchase price, and that abstracts of title shall be furnished to the purchasers of the land in each section.   It is provided that if the purchasers fail to make any of the payments specified, then the moneys paid by them shall be forfeited and the contract become null and void.

On December 10, 1900, another contract, alike in its provisions to that of December 6, 1900, and covering an additional 10,160 acres, was executed by the plaintiff.   The purchasers paid $500 on each of these contracts.   Copies of both contracts with an explanatory letter were sent to Mr. McComb at Oshkosh for acceptance and ratification, he being supposed to be the owner of the lands included in the contracts.

Upon receiving the contracts Mr. McComb conferred with Mr. Gates and discussed the terms upon which the lands would be sold.   On December 19, 1900, the defendant sent the following letter:

"December 19, 1900.
*"A. C. McComb, Oshkosh, Wisconsin:*

"DEAR SIR: Your postal card dated the 18th, received, stating your party was out of town.

"I was thinking the matter over and expected to see you this morning and have concluded if your people did not wish to pay $10,000 down as part of the purchase money on the 26,000 acres mentioned, I would probably agree to this, to wit:

"Give them a *bona fide* option on the land until May 1st, by their paying $2,000 down now, which would cover the

taxes probably, and on the first of May, if they made another reasonable payment, that the $2,000 paid on the option could apply as part of the purchase price, fixing the price at $2.25 per acre in the contract, and dividing up 75c per acre as per your and Wade's instructions, leaving us net $1.50 per acre.

"If this is agreeable to you, I will draw the contract, provided you come down here and bring $2,000 with you to pay over on the option. Guess we can agree on a contract.

"Will leave this proposition open not longer than this week.

"Have mailed a carbon copy of this letter to Mr. Wade to-day.                    Respectfully,

"J. L. GATES LAND COMPANY,

"James L. Gates."

As the result of communications between the various parties concerned, Mr. Johnson, Mr. McComb, and the plaintiff met in Milwaukee on January 3, 1901, to arrange with Mr. Gates for the sale of the lands. At the meeting in Mr. Gates's office, the contracts executed by the plaintiff as the agent of Mr. McComb were produced and discussed. The plaintiff claims, and has produced evidence to sustain the claim, that Mr. Gates asserted ownership of the lands included in the McComb contracts. After some discussion the following contract was prepared by Mr. Gates:

*"Land Contract.*

"This agreement made in duplicate, this 3d day of January, A. D. 1901, by and between *J. L. Gates Land Company,* a corporation of the state of Wisconsin, party of the first part, and S. J. Johnson and T. A. Thompson, of Sioux City, Iowa, parties of the second part:

"Witnesseth, first, that the said party of the second part hereby agrees and binds themselves, their heirs and assigns, to pay or cause to be paid to the said party of the first part, its assigns or legal representatives, the sum of fifty-three thousand seven hundred and fifty dollars ($53,750), being at the rate of $2.15 per acre, for twenty-five thousand acres of land, situated in Price county, Wisconsin.

"Payments to be two thousand dollars ($2,000) on delivery of this contract, and half the balance on June 15, 1901,

and the other half of the balance on November 1, 1901.    The deferred payments to bear five per cent. (5 %) interest from and after June 15th, 1901.

"The aggregate price of the above may vary according to the number of acres of land, being more or less, and the same being intended to apply when fully completed as the purchase money of all the lands owned by said *J. L. Gates Land Company,* in township 36, range 2 east, more or less.    Township 34, range 1 west, more or less.    Township 35, range 1 west, more or less, and township 35, range 2 east, more or less.

"The two thousand dollars ($2,000) above specified and paid this day is to be forfeited on the 15th day of June, unless the further payments as specified are made.    The time being the essence of this contract and to be void and of no effect after said 15th day of June, unless the further payments are made.

"Said party of the second part further agrees that he will pay all the taxes which shall be assessed on the above described premises after this date.

"Second, said party of the first part hereby agrees when the aforesaid sums of money equal to $2.15 per acre are fully paid with interest, it will on demand thereafter cause to be executed and delivered to said parties of the second part, their heirs or assigns, a good and sufficient warranty deed or conveyance to all the above referred to, with a free and clear title to the same, free from any incumbrances whatever, except the taxes following this date.

"It is hereby understood if the deferred payments referred to falling due on the 15th day of June, 1901, and the 1st day of November, 1901, shall be paid in cash on or before the 15th day of June, the price of the whole of the said land is to be reduced to two dollars and five cents per acre ($2.05) instead of two dollars and 15/100 ($2.15) per acre.

"It is further stipulated that in case of the forfeiture of $2,000, that if the parties of the second part wish to take the land in any one or more townships and pay for the same at $2.15 per acre, they may do so.

"It is further stipulated, if the June payment is made and the extension is requested on the November payment, it may be had.

"In witness whereof, the said party of the first part has

caused these presents to be executed by its president and secretary and affixed its corporate seal; and the said parties of the second part have set their hand and seal this 3d day of January, 1901.

J. L. GATES LAND COMPANY,<br>
James L. Gates, President.

"Julius Jungblut.      Robert L. Gates, Secretary.<br>
"A. C. McComb.      S. J. JOHNSON."

After Mr. Gates had signed the contract and had left, his son, Robert L. Gates, secretary of the defendant company, prepared and executed for the defendant the following additional provisions of the contract:

"It is hereby agreed between both parties hereto, that upon completion of the payment herein provided on June 15, 1901, the said party of the first part shall, upon demand thereafter, execute a deed to the parties of the second part, conveying all the lands as above set forth to the said parties of the second part, and a mortgage to secure the balance of the purchase price shall then be executed to the party of the first part and delivered to the said party of the first part.

"It is also provided that separate mortgage may be given on all lands in each township, if desired.

"A partial release may be had upon application to the parties of the first part and upon payment of the sum of one and twenty-five one-hundredths ($1.25) dollars, for said release of mortgage, which shall be after the first payment shall have been made on or before June 15, 1901.

"In case the final payment on November 1, 1901, shall not be made at that time, it is agreed and understood that providing the one-half payment shall have been made on June 15, 1901, as above set forth, said party of the first part agrees to accept a mortgage or mortgages on these lands due and to become due on or before one, two or three years after November 1st, 1901, or at any time within three years thereafter.

Hereby agreed to.<br>
1/3/1901.<br>
J. L. GATES LAND COMPANY,

"Mr. Julius Jungblut.      By Robert L. Gates, Secretary.<br>
"A. C. McComb.      S. J. JOHNSON."

Mr. A. T. Thompson, Mr. Johnson's associate in the purchase of the lands, was not present, and it was arranged that the contract should be forwarded to a bank at Sioux City, Iowa, so that he might execute it and make the payment provided.   From Milwaukee Mr. Johnson went directly to Phillips for the purpose of examining the records of title to the lands which were to be conveyed by the contract of January 3, 1901.   As the result of his examination he determined that the defendant had title to about 3,000 acres of the 26,180 acres covered by the contract.   He telegraphed his associate not to sign the contract and stopped payment of the check given by him to the defendant.   Mr. Johnson returned to Milwaukee, interviewed Robert L. Gates, and upon the trial of this action testified that Mr. Gates admitted that the defendant did not have title to all the lands covered by the contract and that it could not perform the contract.

Plaintiff brings this action to recover the commission alleged to be due him for procuring a purchaser ready, willing, and able to purchase the lands which the defendant commissioned Mr. Wade and Mr. McComb to sell.   The plaintiff has assignments from McComb and Wade of their commissions and rights of action against the defendant arising out of the agency contract.

At the close of the testimony the court directed a verdict in favor of the defendant on the ground that the contract of January 3, 1901, was an option contract and did not entitle plaintiff to recover a commission for producing a purchaser ready, able, and willing to purchase the lands upon the terms agreed upon.   This is an appeal from the judgment on the verdict.

For the appellant there was a brief by *John J. Sutton,* attorney, and *Paul D. Durant,* of counsel, and oral argument by *Mr. Durant.*   They cited *Willes v. Smith,* 77 Wis. 81, 86, 87; *Hale v. Kumler,* 85 Fed. 161, 165; *Holden v. Starks,* 159 Mass. 503, 34 N. E. 1069; *Stewart v. Mather,* 32 Wis. 344;

*Delaplaine v. Turnley,* 44 Wis. 31; *Kelly v. Phelps,* 57 Wis. 425; *Magill v. Stoddard,* 70 Wis. 75; *O'Connor v. Semple,* 57 Wis. 243; *McKenzie v. Lego,* 98 Wis. 364; *Riemer v. Rice,* 88 Wis. 16; *Donohue v. Padden,* 93 Wis. 20, 22; *Bell v. Siemens & H. E. Co.* 101 Wis. 320; *Terry v. Reynolds,* 111 Wis. 122; *Arnold v. Nat. Bank,* 126 Wis. 362, 365; *McCabe v. Jones,* 141 Wis. 540, 543; *Grieb v. Koeffler,* 127 Wis. 314, 316; *Burdon v. Briquelet,* 125 Wis. 341, 347; *De Wolf v. Wis. Lakes I. & C. Co.* 141 Wis. 239, 243; *Monk v. Parker,* 180 Mass. 246, 63 N. E. 793; *Gilder v. Davis,* 137 N. Y. 504, 33 N. E. 599, 20 L. R. A. 398; *Stange v. Gosse,* 110 Mich. 153, 67 N. W. 1108; *Fitzpatrick v. Gilson,* 176 Mass. 477, 57 N. E. 1000; *Crevier v. Stephen,* 40 Minn. 288, 41 N. W. 1039; *Heinrich v. Korn,* 4 Daly, 74; and other cases.

For the respondent there was a brief by *Flanders, Bottum, Fawselt & Bottum,* attorneys, and *James G. Flanders,* of counsel, and oral argument by *Mr. Flanders.* They argued, among other things, that the contract of January 3d on its face was an option only, and not enforceable against the vendees. *Smith v. Merrill,* 134 Wis. 227, 233; *Lawrence v. Rhodes,* 188 Ill. 96, 99, 100; *Bunn v. Keach,* 214 Ill. 259, 264; *Zeidler v. Walker,* 41 Mo. App. 118, 120, 121; *Reiger v. Bigger,* 29 Mo. App. 421; *Wilson v. Ellis* (Tex. Civ. App.) 106 S. W. 1152, 1153; *Runck v. Dimmick* (Tex. Civ. App.) 111 S. W. 779, 780; *Lawrence v. Pederson,* 34 Wash. 1, 74 Pac. 1011–1013. An option will not support a broker's claim for commissions unless it results in sale. *Gerding v. Haskin,* 141 N. Y. 514, 519; *Hopwood v. McCausland,* 120 Iowa, 218, 221; *Aigler v. Carpenter Place L. Co.* 51 Kan. 718; *Lawrence v. Rhodes,* 188 Ill. 96, 100; *Bunn v. Keach,* 214 Ill. 259; *Zeidler v. Walker,* 41 Mo. App. 118; *Dwyer v. Raborn,* 6 Wash. 213; *Butts v. Ruby,* 85 Mo. App. 405, 408; *Kimberly v. Henderson,* 29 Md. 512; *Jordy v. Salmen B. & L. Co.* 121 Ala. 457, 46 South. 572; *Pape v. Romey,* 16 Ind. App. 470, 44 N. E. 654, 45 N. E. 671; *Condict v. Cowdrey,*

139 N. Y. 273; *Ward v. Zborowski,* 31 Misc. 66, 63 N. Y. Supp. 219; *Milstein v. Doring,* 102 App. Div. '349, 92 N. Y. Supp. 417; *Benedict v. Pincus,* 109 App. Div. 20, 95 N. Y. Supp. 1042, 1044; *Humphries v. Smith,* 5 Ga. App. 340, 63 S. E. 248; *Fox v. Denargo L. Co.* 37 Colo. 203, 86 Pac. 344.

SIEBECKER, J.   From the foregoing statement of facts it is apparent that the agency contract of Wade and McComb was an engagement by them to find a purchaser, and to sell the defendant's lands at a stated price, the terms of sale to be arranged and agreed upon by the defendant and such purchaser.   The inquiry, therefore, is, Did these real-estate agents execute this agreement by securing a purchaser of any specific real estate at the stipulated price upon terms mutually acceptable to the defendant and the purchaser?   This inquiry must be answered in the negative.   It clearly appears that all the negotiations prior to January 3, 1901, were preliminary steps to effect a purchase and sale of lands in Price county upon terms and conditions to be arranged and agreed to by the defendant and the prospective purchasers.   It is not disputed, but that the agents under the agency contract were required to procure a purchaser ready, able, and willing to buy at the price defendant demanded for such quantities as might be agreed between defendant and purchaser and upon such terms and conditions as would be acceptable to buyer and seller. Under these arrangements execution of the agency agreement required that the proposed purchasers should in fact select lands embraced in the agency and be ready, willing, and able to consummate the purchase by accepting a transfer of such lands as were agreed upon by them and defendant upon the terms mutually agreed to by both parties to the contract.   The contention of the plaintiff is that this was accomplished by the transactions which merged in the contract of January 3, 1901, and that the commissions are therefore due him.   This claim is based on the grounds that this agreement of January 3d is

a sale of 25,000 acres of land situated in specified townships in Price county, and that the defendant is in default under the contract by reason of its inability to perform the agreement to convey title to the quantity of land embraced in this contract. *Bowe v. Gage,* 127 Wis. 245, 106 N. W. 1074.

The provisions of the contract have been stated heretofore. The evidence shows that the provisions of the contract were agreed upon in the negotiations between J. L. Gates, as president of the defendant company, and S. J. Johnson, one of the purchasers, at their meeting in Milwaukee January 3, 1901, and that the contract was signed by the defendant's president and secretary and by Mr. Johnson. The contract was to be signed by the other purchaser, Mr. Thompson, at Sioux City, Iowa. It is manifest from the facts shown that Mr. Johnson was to satisfy himself of defendant's title to the lands in the specified townships before the agreement was to be effective between the parties, and that upon examination of the record titles to the lands he was dissatisfied therewith, and instructed his associate, Mr. Thompson, not to sign and execute the writing. Mr. Thompson thereupon refused to sign it. Mr. Johnson then declared to the secretary of the defendant company that they would not purchase the lands, and, upon his demand, his check, given defendant as part consideration for this agreement, was returned to him. This closed the transaction.

From these facts it is manifest that the parties at no time treated the agreement as a consummated purchase and sale of the lands embraced therein. The various steps of the negotiations and transactions, up to the point of refusal of Mr. Johnson to proceed with the matter, indicate that the parties understood that the agreement of January 3d was not to be effective until Mr. Johnson had satisfied himself of the title to the land and Mr. Thompson had approved and signed it, which he confessedly never did.

The plaintiff must also fail in his contention that the con-

tract of January 3d was in itself a fulfilment of the agency contract with the defendant. He asserts that the provisions of this agreement having been assented to by the parties thereto shows that purchasers had been furnished who were ready, able, and willing to buy the quantity of land listed with Mr. Wade and Mr. McComb at the price specified in the agency agreement. This wholly omits consideration of the essential fact that no commission was due for an agent's service until the proposed purchasers had actually assented to and accepted the terms of sale and purchase as proposed by the defendant. This, we have seen, was never effected by the transaction proven.

Upon these considerations it follows that the court's direction of a verdict for the defendant was correct, and that the judgment of dismissal of the complaint and for costs was properly awarded.

*By the Court.*—Judgment affirmed.