Argued February 10, reversed and remanded March 8, 1921.

## BECKER *v*. OREGON–KANSAS TIMBER CO.

(195 Pac. 1033.)

**Brokers—Commission not Earned Where Prospective Purchaser not Responsible.**

1. No commission was earned under a broker's contract to sell property by a certain date where at that date the alleged purchaser was a corporation which had not come into existence, and the promoter thereof conducting the negotiations for it had not become personally liable on the contract, so that against neither the corporation nor the promoter could there have been recovery in a suit for specific performance by the seller, and the cash payment or first payment, the fund from which the commission was to have been paid to the broker, had not been paid by the purchaser.

From Multnomah: ROBERT TUCKER, Judge.

Department 2.

The plaintiff, as a real estate broker, procured from the defendant a contract, of which the following is a copy:

---

As to the right of recovery of the broker's commission where the contract provides for the payment of commission from purchase price, see note to Moore v. Irvin, 20 L. R. A. (N. S.) 1172, 1174; Wolverton v. Tuttle, 51 Or. 501 (94 Pac. 961); Columbia Realty Co. v. Alameda Land Co., 87 Or. 277 (168 Pac. 64, 400); Runnells v. Laffell, 93 Or. 342 (176 Pac. 802, 183 Pac. 756); Murphy v. W. & W. Livestock Co., 26 Wyo. 455 (187 Pac. 187, 189 Pac. 857).

"To M. H. Becker:

"For receipt of one dollar, receipt of which is acknowledged, we hereby appoint you agent to make sale of the following described real property, to wit: The west half of the northeast quarter, and the northwest quarter, and the west half of the southwest quarter, all in section 26, township three (3) north of range six (6) west of Willamette Meridian, for the price of $160,000, to be paid upon terms as may be agreed upon between the seller and buyer.

"In case you sell the above described property within the time specified, we agree to make the purchaser a good and sufficient warranty deed to the same, and to furnish a complete abstract of title, if required, and also agree to pay you from the proceeds of such sale $5,000 as commission for your services.

"Should you bring us a customer who will buy the property, and does buy the same, you still have the commission, if the sale be consummated to such customer by June 1st, 1918, and should we elect to and sell to him said property for less than $160,000 by said time, you shall still have said commission.

"This commission is to be paid out of the first proceeds of said sale of said property.

"This contract shall continue until June 1, 1918, and if you shall during that time produce a customer, ready, willing, and able to buy said property at said figure, or for any other figure we may make to him, you shall be entitled to your commission if we sell to such customer by June 1, 1918. This, however, is subject to our right to sell to anyone else before you should produce such customer, and should we, during the time of your agency, make *bona fide* sale of said property, your agency shall terminate before June 1, 1918, upon notice to you, in writing; otherwise it shall be at an end June 1, 1918, except as otherwise herein provided.

"Oregon-Kansas Timber Co.<br>
"C. A. Haulenbeck.

"Witnesses:

"M. H. Becker."

Plaintiff claims to have performed the services required of him by the contract according to its terms, all before June 1, 1918, by producing as purchasers of the property one H. J. Miller and a corporation called the Seattle-Portland Logging and Milling Company, who were ready, able, and willing and offered to buy the property at the price of $160,000, and offered to complete the purchase by the date mentioned, on terms proposed by the defendant, which terms included a cash payment of an amount more than sufficient to enable the defendant to pay the plaintiff's commission, and that the defendant failed and refused to make the sale, without the fault of the plaintiff or of the proposed purchasers. The complaint is denied except as admitted in the answer. The corporate character of the defendant, the making of the contract, and the refusal to pay the broker's fee are admitted. Further answering, the defendant states that the plaintiff did not produce a purchaser ready, able, and willing to buy the property, nor has he made a sale of the property. Other averments are made in the answer which it is not necessary to consider. The affirmative matter in the reply refers to what is deemed immaterial in the answer for the purposes of this decision.

A general demurrer to the complaint was overruled, together with other objections raised as to admissibility of testimony and the refusal of instructions. The plaintiff had a judgment for the full amount of his claim, and the defendant appeals.

REVERSED AND REMANDED.

For appellant there was a brief over the names of *Mr. Johnston Wilson* and *Messrs. Clark, Middleton & Clark,* with an oral argument by *Mr. Wilson.*

For respondent there was a brief over the names of *Messrs. Bauer, Greene & McCurtain* and *Mr. John Van Zante,* with an oral argument by *Mr. Thomas G. Greene.*

BURNETT, C. J.—1. It will be observed that the complaint was laid on the theory that the plaintiff has performed his contract in full and has earned his commission.   The action is not one to recover damages resulting from a breach of the contract.   It will be noted, also, that no waiver on the part of the defendant of any of the terms of the contract is pleaded.   The plaintiff was appointed "to make sale" of the property. The defendant agreed that, in case the plaintiff should "sell the above-described property within the time specified," it would make the purchaser a good and sufficient warranty deed to the same, furnish a complete abstract of title, and "pay you from the proceeds of such sale $5,000.00 as commission for your services."   Again, it is reiterated:

"Should you bring us a customer who will buy the property, and does buy the same, you still have the commission, if the sale be consummated by June 1, 1918."

Still further:

"This commission is to be paid out of the first proceeds of said sale of said property."

And finally:

"This contract shall continue until June 1, 1918, and if you during that time produce a customer ready, willing, and able to buy said property at said figure, or at any other figure we may make to him, you shall be entitled to your commission, if we sell to such customer by June 1, 1918."

It is without dispute that the corporation called the Seattle-Portland Logging and Milling Company had

not been organized and was not in existence until some days after June 1, 1918. All that had been done, as disclosed by the testimony, was that articles of incorporation had been executed by Miller and two other parties who were only nominally participants in the transaction. The articles had not been filed either with the corporation commissioner or with the county clerk of Multnomah County, where the home office was to be located, and no subscription of stock had been made. As said in *Schreyer* v. *Turner Flouring Mill Co.*, 29 Or. 1 (43 Pac. 719), in the opinion of Mr. Justice Wolverton:

"Most certainly it is true that a corporation must have an existence before it can assume to act or carry on business. The statute provides how a private corporation like this may be formed and organized, and prior to its lawful organization it is idle to think of its entering into contractual relations."

The testimony shows continued negotiations between those assuming to represent the defendant, on the one hand, and Miller on behalf of the Seattle-Portland Logging and Milling Company, up to June 1, 1918. Nowhere in the testimony is it disclosed that Miller proposed to become personally liable for the purchase of the property. The parties conducting the negotiations went so far as to provide a form, not of absolute sale, but one executory in its nature, for the future sale of the property, to which executory contract only the Oregon-Kansas Timber Company, the defendant, and the Seattle-Portland Logging and Milling Company were named as parties, but it was never executed by either party named therein. In this form only did Miller negotiate.

Conceding for the moment, without admitting, that the plaintiff's part of his appointment as agent had

been performed when he brought together parties one of whom was willing, able, and ready to purchase, and the other the defendant, we must yet attend to the situation disclosed by the testimony when construed according to the pleadings. The averment of the complaint is that the plaintiff produced Miller and the corporation, Seattle-Portland Logging and Milling Company. There are therefore two parties mentioned in the complaint as possible purchasers, the one natural and the other artificial. The latter had no legal or equitable existence, and hence was incapable of being ready, able, and willing to buy the land, much less actually to purchase the same. Never before the date of the expiration of plaintiff's contract did Miller, the former of those two parties, indicate a willingness to assume personal liability for the purchase, and he was careful to do no act in the name of the embryo corporation whereby liability would be thrust upon him personally. The plaintiff has cited many authorities to the effect that, if one has contracted in the name of a corporation which has no existence, he will become personally liable. The doctrine is thus stated, for example, in 10 Cyc. 269:

"The promoters of a corporation are personally liable for debts which they assume to contract in its name and behalf, before it has acquired a *de facto* organization, such as cannot be attacked except by the state, and if the governing statute prescribes a condition precedent to corporate existence, such as filing of articles of incorporation, they are personally liable for engagement which they have assumed to make in the name of the supposed corporation before that condition has been fulfilled."

Practically without exception the precedents cited by the plaintiff on this point are those where a debt has been incurred on behalf of the prospective corporation,

or property has been obtained from another party in its name. No such situation is presented in this case. These authorities would apply, if Miller had actually contracted in the name of the proposed corporation; but he did not. Without expressing in any way his willingness to buy, on or at any time before June 1, 1918, he kept the prospective corporation to the fore as the would-be able and willing purchaser, when in fact it was no more than a mere fiction. He never did anything in the name of the proposed corporation that would make him personally liable. No situation is presented by the testimony in which the defendant could have taken advantage of the acts of Miller for the prospective corporation and have sued either of them for specific performance. The plaintiff is bound by the attitude of his proposed purchasers. The initiative must come from them. His contract was to effect a sale and at no time was the defendant bound to make a warranty deed to the property until a sale was effected. The contract called for a "customer who will buy the property, and does buy the same," on or before June 1, 1918.

A case much like this was *Oregon Home Builders* v. *Montgomery Investment Co.,* 94 Or. 349 (184 Pac. 487). In that case a buyer was to be produced "ready and willing to consummate a deal." Here, the condition is that "the sale be consummated with such customer by June 1, 1918." There, the broker was authorized to retain his commission out of the first money paid on the purchase price. In the case at bar it is directly stipulated that "this commission is to be paid out of the first proceeds of said sale of said property." After discussing the term "consummation of the deal" and citing many authorities, Mr. Justice HARRIS used this language:

"As has already been said, the general rule is that a broker employed under a contract to sell or exchange lands is, in the absence of a stipulation to the contrary, entitled to his commission immediately upon the execution of a valid and binding contract between the employer and customer; but in the contract presented to us we find that the parties have in at least one instance provided 'to the contrary,' for, if a contract of sale had been made with the price payable in instalments or otherwise instead of a contract for an exchange, the commission would be '$750 of the price,' with authority given to the broker to retain the commission out of the first payment made on the price. When the contract of employment is construed as a whole, and especially when it is read in the light of the stipulation which in effect postpones the payment of the commission to such time as enough of the price is paid to satisfy the commission in the event of a contract of sale, we think that 'to consummate a deal' should be interpreted, in the contract presented here, to mean the completion and carrying out of the contract of exchange by an actual transfer of the properties."

The fund out of which the commission in the instant case was to be paid has never been brought into existence. In suing upon the contract, not for the damages resulting from a supposed breach, but for the commission earned, it is incumbent upon the plaintiff to prove not only his performance of the terms, but also that the fund out of which he was to be paid has come into existence.

It would seem that in offering both Miller and the corporation as purchasers, if that were the case, as alleged in the complaint, the defendant would have a right to rely not only upon the credit of Miller, but also upon that of the proposed corporation, involving the responsibility of all of its stockholders, not only Miller if he should subscribe, but also all

other subscribers to its capital stock. Under such circumstances the defendant could not be put in default unless both of the proposed customers were in fact ready, able, and willing to buy. Beyond controversy the corporation was not such an individual. Without question Miller never proposed to become personally responsible. Neither did he do any act by which responsibility could be visited upon him. The testimony fails to prove the allegation of the complaint that the plaintiff furnished purchasers ready, able, and willing to buy. Neither does that pleading show the existence of the fund out of which the parties stipulated that plaintiff's commission should be paid.

The motion for nonsuit should have been allowed. The judgment is reversed, and the cause remanded to the Circuit Court, with directions to enter a judgment of nonsuit in favor of the defendant.

REVERSED AND REMANDED.

JOHNS, BEAN and BROWN, JJ., concur.