KAUFMAN, Appellant, vs. LA CROSSE THEATERS COMPANY, Respondent.

*October 19—November 20, 1945.*

44

*Hubert V. Fuller* of La Crosse, for the appellant.

For the respondent there was a brief by *Gordon, Law, Brody, Johns & Roraff* of La Crosse, and oral argument by *Leonard F. Roraff*.

MARTIN, J.    This appeal presents the following questions: (1) Did the parties enter into a valid brokerage contract? (2) Did the broker produce a lessee ready, willing, and able to take a lease upon the terms specified in the contract?    (3) Were any of the terms of the contract ambiguous?    These questions were answered in the negative by the trial court.

The listing agreement is in full as follows:

"Mr. Samuel M. Kaufman,
        "740 N. Plankinton Avenue,
        "Milwaukee, Wisconsin.

"Dear Sir: In consideration of your efforts to negotiate a lease of the theater properties controlled by the undersigned and located at La Crosse, Wisconsin, we hereby give you for the period of twenty (20) days from this date the sole and exclusive agency to lease said theater properties at the rentals and on the terms stated in our letter to Standard Theaters under date of November 5, 1943, or upon such other terms and conditions as we may accept, and

"In consideration thereof, we agree to pay you a commission equal to ten percent of the rental of said lease, which commission shall have been earned upon the execution of said lease, but shall be payable at the rate of $4,000 a year during the term of the lease, or until default therein, said payments of commission to be made monthly to you as this company receives its rentals in accordance with the terms of the lease executed. You shall waive your compensation on default in payment of rent, but you shall be entitled to such payment on receipt thereof at any time thereafter.    We agree that no change in the rental of said lease shall be made which shall affect your right to col-

lect the full commission earned without obtaining your consent in writing first had and obtained.

"The undersigned further consent that you shall also have the right to receive compensation from the prospective lessee, and that you shall also have the right to be financially interested in the lessee of the theaters.

"Dated this 8th day of December, 1943.

"LA CROSSE THEATERS COMPANY,

"By M. ROSENSTEIN, President,

"EDWIN SCHWALBE, Secretary."

The foregoing was duly witnessed and acknowledged.

Exhibit B is in full as follows:

"Standard Theaters,                                    November 5, 1943.

"212 West Wisconsin Avenue,

"Milwaukee, Wisconsin.

"Gentlemen: The La Crosse Theaters Company, a corporation, of La Crosse, Wisconsin, hereby offers to lease to your company or to a corporation formed by your company the Rivoli Theater Building at La Crosse, Wisconsin, and to sublet to you the Riviera Theater building, Strand Theater and the Wisconsin and Bijou Theaters upon the following terms:

"Your company is to take over all of the leases now held and now being operated by our company and is to pay therefor to the La Crosse Theaters Company $40,000 per annum in monthly instalments of $3,333.33 in advance of the first day of every month during the term.

"Your company is to deposit $40,000 at the making of the lease agreements with the La Crosse Trust Co. of La Crosse, Wisconsin, as a guaranty for the faithful performance of each term and condition of the lease to be entered into, it being understood that upon the default of your company as to any term, condition or covenant of the lease, that the $40,000 be immediately paid by the Trust Company to the La Crosse Theaters Company as liquidated damages for the breach of the lease.

"This company will obtain if possible a thirty-year lease upon what is known as the Wisconsin Theater building upon the same terms and conditions as the property is now held by the La Crosse Theaters Company as tenant and will assign that lease to your company.

"Your company will pay all the taxes against the real estate, will keep the buildings and all property leased insured for the full value thereof, and your company will receive all of the rentals and profits from the said property during the term.

"Your company will also pay any license fee or license tax which may hereafter be assessed against the operation of the business so that the $40,000 rental will be net to the La Crosse Theaters Company.

"At the time of your acceptance and the making of the formal-lease, your company will purchase from our company for cash all of the office supplies, janitor's supplies, the automobile and theaters supplies belonging to the company at a price to be agreed upon between the two companies; and in the event that we are unable to agree upon the price, we will appoint an arbitrator, and your company appoint one and the two arbitrators appointed select a third one to determine the present cash value of personal property on hand.

"Your company will likewise pay us for all prepaid insurance, for prepaid film, and for any other contract or property for which our company has already paid and has not had the full enjoyment of; and will also assume and save our company harmless from all film contracts entered into before the date that the formal lease is signed.

"It is further understood that if this lease is entered into that Mr. Edwin Schwalbe of this company will be employed by your company as a general manager of the La Crosse Theaters at a salary of not less than $100 per week for a period of ten (10) years.

"The La Crosse Theaters Company may agree to permit you to deposit bonds approved by them in lieu of a cash deposit as a guaranty for the faithful performance of the conditions and terms of the lease, and when such bonds are deposited, it is understood that your company will until it defaults under the lease, be entitled to all the interest or income upon any such bonds or other security deposited.

"It is understood that you are to have forty-five (45) days within which to accept this proposal, and that during that time your agents, auditors and attorneys are to be given access to all our books, records, leases, and other papers, it being understood, however, that such examinations of books and papers must be made at our office, to enable you to determine the

nature of the leases, contracts and agreements owned by this company and the value of its various properties.

"Yours very truly,

"LA CROSSE THEATERS COMPANY,

"Mr. ROSENSTEIN, President,

"EDWIN SCHWALBE, Secretary."

Exhibit C is a letter from the La Crosse Theaters Company to the plaintiff dated December 8, 1943, extending the period of the listing contract to February 1, 1944.

The La Crosse Theaters Company owns the Rivoli building which houses the Rivoli Theater. It operates the Rivoli Theater, also the Riviera, Strand, Wisconsin, and Casino Theaters, the latter four being held by it by various leases, which leases have various expiration dates. The Standard Theaters, to whom defendant's letter of November 5, 1943, was addressed, never made any lease with the La Crosse Theaters Company, and no corporation in which they were interested or formed by them made a lease with said company. None of the Exhibits A, B, or C makes any reference to the term of the lease to be executed by defendant company. The letter of November 5, 1943, states:

"This company will obtain *if possible* a thirty-year lease upon what is known as the Wisconsin Theater Building upon the same terms and conditions as the property is now held by the La Crosse Theaters Company as tenant and will assign that lease to your company."

It further provides:

"It is further understood that if this lease is entered into that Mr. Edwin Schwalbe of this company will be employed by your company as a general manager of the La Crosse Theaters at a salary of not less than $100 per week for a period of ten (10) years."

This provision as to the employment of Mr. Schwalbe is a condition of the listing agreement of December 8, 1943, and

also of the time-extension agreement. The parties never reached any agreement as to salary and employment of Mr. Schwalbe or as to whether renewals of leases on theaters other than the Rivoli could be obtained. On January 31, 1944, being the last day of the listing period, plaintiff wired defendant company as follows:

"Undersigned authorized to and accept on behalf of customer lease of La Crosse Theaters per your offer of December 8, 1943, to the undersigned as set forth in letter of November 5, 1943, to Standard Theaters."

Plaintiff testified that Mr. John Ruppa of Milwaukee was the customer referred to in the above telegram. However, in that connection plaintiff testified:

"*Q.* And will you state to the court the plan of financing and operating the theaters that your principal talked about? *A.* Mr. Ruppa was to put up $40,000 cash and to form a corporation to take over the leases from the La Crosse Theaters Company. They had practically decided on a name to be used. It was to be called the Advance La Crosse Theaters Company. This Advance La Crosse Theaters Company was to lease to Mr. Gran and to his people, the Standard Theaters Company, not to lease to them, to arrange a working agreement where the Standard Theaters Company was to take over the active management of these theaters and Mr. Ruppa's corporation was to participate in fifty per cent of the profits."

In this connection, on February 21, 1944, appellant wrote to Mr. Brody, the attorney for La Crosse Theaters Company, as follows:

"Upon my return to the city I find your letter of February 10, 1944, with respect to La Crosse Theaters matter. The Advance La Crosse Theater Company, a corporation to be organized, in accordance with the option granted to Standard Theater on November 5, 1943, has been ready and is ready to carry out the terms of the option and accept the lease. . . ."

This letter and plaintiff's telegram of January 31, 1944, are the only written communications in any way purporting to represent a proposed lessee.

It appears that the so-called Advance La Crosse Theaters Company was never organized. Mr. Hersh, who acted as the attorney for Mr. Ruppa, testified:

"*Q.* And was the corporation finally formed? *A.* Actually not to the extent of filing the articles with the secretary of state and having them issue a charter."

The trial court found that "the Advance La Crosse Theaters Company had no corporate existence at any of the times alleged in this action, and has never since had any corporate existence." The court further found that "the plaintiff never presented to the defendant, La Crosse Theaters Company, any prospective lessee ready, able, and willing to lease the holdings of the La Crosse Theaters Company." It is elementary that a proposed acceptor must be ready, able, and willing to go through with the deal within the time limited. A nonexistent corporation cannot be said to be ready, willing, and able to accept an offer or carry out a transaction. See *Weitbrec v. Morris,* 62 Colo. 345, 163 Pac. 1119; *Baker v. Oregon-Kansas Timber Co.* 99 Or. 602, 195 Pac. 1038; *Gerding v. Haskin,* 141 N. Y. 514, 36 N. E. 601; *S. Hekemian & Co. v. Rivara,* 122 N. J. Law, 523, 6 Atl. (2d) 392, affirming 121 N. J. Law, 418, 3 Atl. (2d) 165.

The finding of the trial court that plaintiff never presented to the defendant any prospective lessee ready, able, and willing to lease the holdings of the La Crosse Theaters Company is amply sustained by the evidence.

We are also of the opinion that the listing agreement, consisting of Exhibits A, B, and C, to which reference has been made, is void for failure to comply with sec. 240.10, Stats. Said section provides as follows:

"Every contract to pay a commission to a real-estate agent or broker or to any other person for selling or buying real

estate or negotiating lease therefor for a term or terms exceeding a period of three years shall be void unless such contract or note or memorandum thereof describing such real estate, expressing the price for which the same may be sold or purchased, or terms of rental, the commission to be paid and the period during which the agent or broker shall procure a buyer or seller or tenant, be in writing and be subscribed by the person agreeing to pay such commission."

The plaintiff alleges an agreement by defendant to give a lease for a period of thirty years. The listing agreement does not specify the period of time for the running of the proposed lease. In *Brest v. Maenat Realty Co.* 245 Wis. 631, 15 N. W. (2d) 798, the court held the contract there involved void and unenforceable because not complying with sec. 240.10, Stats., in that it did not state the terms of rental or the period in which the tenant should be procured. In the instant case there is no mention of the period of time the lease is to run. It seems obvious that the contract does not comply with the statute.

Appellant argues that the contract is ambiguous and for that reason certain conversations and correspondence can be read into the contract so as to comply with the provisions of sec. 240.10, Stats. If the contention as to the ambiguity of the contract were correct, there would be merit in the argument that such conversations and correspondence should be read into the contract; but we are unable to find any ambiguity. What appellant seeks to do is to add terms to an unambiguous contract.

The contract provides that plaintiff's commission shall have been earned upon the execution of the lease. No lease was ever executed. The judgment must be affirmed.

*By the Court.*—Judgment affirmed.