Niske, Appellant, vs. Nackman, Respondent.

*April 4—May 1, 1956.*

70

For the appellant there was a brief by *Smith, Okoneski, Puchner & Tinkham,* attorneys, and *Jerome A. Maeder* of counsel, all of Wausau, and oral argument by *Mr. Richard P. Tinkham* and *Mr. Maeder.*

For the respondent there was a brief and oral argument by *Robert D. Martinson* of Eagle River.

STEINLE, J.   The question presented is whether the broker is entitled to payment of the commission, he having submitted the prospect who bought the property from the owner, although the sale was not consummated until approximately four months after the listing contract had been terminated, and the owner having agreed that he would not sell the property to a prospect submitted directly or indirectly by the broker, and that if the broker sold the property directly or indirectly, the owner would pay the commission.

On this appeal the respondent, Albert Nackman, concedes that the listing agreement was valid under sec. 240.10, Stats.; that the listing agreement did not terminate until May 1, 1954; and that Edgar Young was a prospect submitted by the appellant, Paul Niske, before the expiration of the listing agreement.   There is no claim by the appellant broker that he was in anywise active in rendering service in the matter after May 1, 1954.   Each side, while acknowledging ambiguity in the contract with reference to the provisions that the owner shall not sell to a prospect submitted directly or indirectly by the broker and that if the broker sells the property directly or indirectly, a commission would be paid, insists that the provisions be construed in its respective favor.

The respondent contends that the provision in the contract that the owner could not sell to a prospect submitted directly or indirectly by the broker is susceptible of but two constructions (1) that the defendant could not have sold to the prospect Young prior to the cancellation of the contract without being liable for the commission, but that he could have sold to him at any time thereafter without incurring liability for the commission; or (2) that Nackman could never have sold to Young after the contract was canceled without being responsible for the payment of the commission.   Respondent contends that this ambiguity must be construed most strongly against the broker for the reason that he supplied the contract.   He relies upon the rule to such effect as declared in

*Dunn & Stringer Investment Co. v. Krauss* (1953), 264 Wis. 615, 60 N. W. (2d) 346.

The appellant Niske maintains that if he did not sell the property directly, it must be considered that he sold it indirectly, for he obtained the prospect, negotiated with him, and the prospect actually bought the property although the sale took place after May 1, 1954. In support of his claim in this regard, appellant relies on *Pallange v. Mueller* (1931), 206 Wis. 109, 238 N. W. 815. There the owner listed her property with the broker for sale or trade, and agreed to pay a commission. She reserved the right to withdraw the property after a particular time by giving notice in writing, providing that no negotiations were pending at the time of the giving of the notice. This court held that the termination of the contract was absolute as against everything except as to such negotiations as were then pending between the parties to the contract. In two other cases cited by appellant in support of its position, *Munson v. Furrer* (1952), 261 Wis. 634, 53 N. W. (2d) 697, and *L. W. Smith & Co. v. Romadka* (1952), 261 Wis. 374, 52 N. W. (2d) 797, this court was called upon to construe liability for brokers' commissions where the owners had agreed to pay commissions in the event that after the termination of the contract they sold to anyone with whom the brokers had negotiated during the life of the contracts. In the *Munson Case* it was held that the term "negotiation" means that the efforts of the broker must have proceeded to the point where the prospect would be considered as a likely purchaser,—one sufficiently interested to buy. In the *L. W. Smith Case* the contract provided for payment of the commission in the event that the owner sold the property during the life of the contract or within six months thereafter to a prospect with whom the broker negotiated.

The question confronting us is whether the language in the contract "to sell to a prospect directly or indirectly" is

in the same category as "negotiating with a prospect" or "finding a likely buyer,"—"one sufficiently interested to buy."

A broker employed to "procure a purchaser" for real estate is entitled to his commission when he produces a person ready, willing, and able to purchase upon terms specified by the owner in the brokerage contract. "To sell" or "to procure a purchaser" are synonymous terms when used in a real-estate broker's contract. *Grinde v. Chipman* (1921), 175 Wis. 376, 378, 185 N. W. 288.

Niske did not actually complete the sale of the property during the life of the listing contract. However the evidence is undisputed that during the existence of the contract he submitted a prospect with whom he had negotiated, and who was a likely buyer, and who actually bought the property four months after the contract expired. At least indirectly he participated in the sale of the property and performed probably the most important feature of the sale, to wit, the furnishing of the buyer. His activities in such regard antedated the termination of the contract. Nackman had agreed to pay the commission in the event that Niske sold the property indirectly. Other than the time provided for the cancellation of the contract, there was no time fixed within which Nackman was not to sell directly or indirectly to a prospect submitted by Niske.

Agreements must receive a reasonable interpretation, according to the intention of the parties at the time of executing them, if that intention can be ascertained from their language. 12 Am. Jur., Contracts, p. 791, sec. 250. It appears clear that by the language "to sell directly or indirectly" the parties had not intended that the broker was to be denied a commission if he produced a likely buyer before the contract expired, and one with whom the owner thereafter consummated the sale.

We are constrained to hold that Young was a prospect submitted by Niske to Nackman whom Niske had interested in the purchase of the property, and with whom he had negotiated; that Young became a likely buyer before the contract terminated, and that Niske indirectly sold the property to him, the efforts in such regard having occurred before the contract expired.

In some of the reported cases where the listing contracts had provided for the payment of commission when the owner sold to an individual with whom the broker had negotiated during the life of the contract, the time after the termination of the contract within which liability for commission could accrue, was specified. In cases where no period was named, the courts held that the owner would be liable for a commission in the event of a sale by him within a reasonable time after the listing contract had expired. Annotations and citations, 27 A. L. R. (2d) 1408. Here the sale was actually consummated four months after a contract expired and less than five months after the broker's last activities in connection with the sale. It cannot be held that the period was of such unreasonable duration as to militate in any manner against the broker's legal right or interest in the commission.

The trial court based its judgment partly on the ground that the property sold by Nackman to Young was of a description different than that contained in the listing contract, and was sold upon terms at variance with those stated in that contract. It seems to us that the evidence does not indicate a very substantial difference. The actual sale price was $34,000 as contrasted with the sum of $35,000 designated in the listing contract. The price had been reduced by the owner without the knowledge of the broker. While the owner had made certain improvements after the listing contract was executed, the same were in existence when the broker exhibited the property to the prospect and while nego-

tiating with him. While an inventory of the personal property was not attached to the listing contract, the owner subsequently furnished an inventory to the broker which he used in negotiating the sale. All of the land and buildings owned by Nackman and exhibited by Niske to Young were included in the sale, although the listing contract had indicated that Nackman offered to sell more land than he owned. The sale involved substantially the same terms included in the listing contract. Some courts have held that under certain circumstances a broker is entitled to commission on a sale effected after the brokerage contract had come to an end, and where the property was sold at a lesser price than that fixed by the brokerage contract. Annotations and citations, 27 A. L. R. (2d) 1429. The fact that the terms of the sale were somewhat different has not prevented the allowance of the commission. Annotations and citations, 27 A. L. R. (2d) 1434. We think that the circumstances here are such as to justify the broker's entitlement to the commission.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment in favor of the plaintiff for the amount of the broker's commission designated in the listing contract.

BROADFOOT, J., dissents.