BOUTELLE, d/b/a BOUTELLE AGENCY, Respondent, v. CHRISLAW, Appellant.*

*April 10—May 9, 1967.*

* Motion for rehearing denied, with costs, on June 30, 1967.

666

667

For the appellant there was a brief by *Mary L. Dooley* of Janesville, attorney, and *Lloyd J. Paust* of Columbus, of counsel, and oral argument by *Miss Dooley*.

For the respondent there was a brief by *Grutzner & Jaeckle* of Beloit, and oral argument by *Gerald W. Jaeckle*.

HEFFERNAN, J.   This was a trial to the court. A finding of fact made by a trial judge will not be set aside up-

on appeal unless it is contrary to the great weight and clear preponderance of the evidence. *Kirchen v. Gottschalk* (1965), 26 Wis. (2d) 123, 126, 131 N. W. (2d) 885. However, this court is not bound by a finding of the trial court which is based upon undisputed evidence when that finding is essentially a conclusion of law. *Pederson v. First Nat. Bank* (1966), 31 Wis. (2d) 648, 654, 143 N. W. (2d) 425; *Vogt, Inc., v. International Brotherhood* (1955), 270 Wis. 315, 321i, 71 N. W. (2d) 359, 74 N. W. (2d) 749.

In the instant case, the undisputed facts show that the broker, within the period limited by the contract, found a purchaser who, though not having the cash in hand or available to pay the purchase price within the term of the contract, did have the credit standing and financial resources to pay the full purchase price by February 15th. The trial judge therefore concluded that the broker had "procured a purchaser" as required by the contract. This is a conclusion of law, and this court may review the undisputed evidence upon which this conclusion is based and reexamine that conclusion.

The question posed by this appeal is whether the broker so complied with the terms of the listing contract that he is entitled to his commission. This court follows the generally accepted rule that:

"A broker employed to 'procure a purchaser' for real estate is entitled to his commission when he produces a person ready, willing, and able to purchase upon the terms specified by the owner in the brokerage contract." *Niske v. Nackman* (1956), 273 Wis. 69, 75, 76 N. W. (2d) 591.

We have stated in *Kaufman v. La Crosse Theaters Co.* (1945), 248 Wis. 43, 50, 20 N. W. (2d) 562, that:

"It is elementary that a proposed acceptor must be ready, able, and willing to go through with the deal within the time limited."

In this case the proposed purchase offer was made within the time limited. The proposed "offer to purchase," however, was not that the cash be delivered during the time stipulated in the contract, but on February 15th, somewhat more than two weeks later. The testimony reveals that the intent of the purchaser was to supply the full amount of the cash on that date upon the tendering of the deed. The question on this appeal is therefore limited to whether in this type of transaction, where the seller insists upon the terms of his listing contract, the cash must actually be paid over and the deal consummated within the listing period if the broker is to collect his commission.

The broker takes the position that all that is required is that there be a purchaser within the period who is ready and willing to close the transaction and who is able at a later date to pay over the cash without resort to some other type of credit arrangement involving the seller. The plaintiff broker went so far as to testify that an offer would be a cash offer even though a proposed purchaser were not able to actually pay over the money until ten months after the expiration of a listing contract.

The law of Wisconsin, however, is that the purchaser must be

". . . able to command the necessary money to close the deal on reasonable notice, or within the time limited by the vendor, if a time be limited." *McCabe v. Jones* (1910), 141 Wis. 540, 543, 124 N. W. 486.

There is, of course, no doubt that, had the vendor accepted the offer to purchase, the proposal of the purchaser would have ripened into a new contract—a contract to purchase—and the vendor would have been bound by it. Here, however, it was not accepted, and for the broker to earn his commission, he must have complied with the terms of the listing contract within the time limited.

We conclude that under these circumstances it was the broker's duty to produce a purchaser who was ready, willing, and able to consummate the deal before the listing contract expired. It is not enough that the purchaser have the potential of consummating the deal within a reasonably short time. He must not only be ready and willing, but have the present ability to pay. The general rule is in accord with this conclusion. Corpus Juris Secundum states:

"Each of the words 'ready,' 'willing,' and 'able' expresses an idea that the others do not convey. All three of these elements must exist in the customer, in order to entitle the broker to his commissions. It is not sufficient that the customer is ready and willing, but he must also have the ability to carry out the loan, sale, purchase, or exchange; neither is it sufficient that he has the ability to purchase; he must be ready and willing to do so; nor is it sufficient that he is able, ready, and willing, but on terms different from those prescribed by the owner. . . .

"To be able to make an immediate cash payment or deposit, a purchaser or lessee must, of course, have money; and it is not sufficient that he has property on which it can be raised or out of which it can be made; but, where he is able to pay cash, it is immaterial whether he had the money originally, borrowed it, or acquired part of it from another person on an understanding that such person is to have an interest in the land purchased." 12 C. J. S., Brokers, p. 192, sec. 85.

An annotation at 18 A. L. R. (2d) 376, 382, notes:

"The view prevails that if the authorization of the broker is for a cash sale, the broker does not earn his commission by merely producing a purchaser who seeks time in which to obtain the purchase price or desires to make deferred payments."

Restatement (2d), Agency, p. 351, sec. 446, follows a similar rationale:

"An agent whose compensation is conditional upon his performance of specified services or his accomplish-

ment of a specified result within a specified time is not entitled to the agreed compensation unless he renders the services or achieves the result within such time, unless the principal, in bad faith, has prevented him from doing so."

The comment to this section, *supra,* page 352, provides the observation:

"The rule is applied most frequently to promises to pay compensation to brokers in consideration for the production by the broker of a customer within a specified time. The usual interpretation of such an agreement is that the broker is to receive his commission only if he produces a customer able, ready, and willing to meet the principal's terms within the specified time, and hence no commission is payable to a broker for producing a prospective customer within the specified time if the latter does not come to an agreement with the principal until after the specified time, unless the principal has agreed with the broker to extend the time or in bad faith prolongs negotiations. The broker can protect himself by requiring an agreement that he is to receive his compensation if he produces a customer who enters into negotiations with the principal within the specified time and subsequently completes the transaction."

Based upon these general principles, we conclude that the term "cash" as it appeared in the listing contract required the payment of such cash during the lifetime of the contract. Leaving out the extraneous portions of the listing contract, it provides that:

"If . . . a purchaser [is procured] by the Broker . . . at the price and upon the terms specified herein . . . during the term of this contract . . . the Seller agrees to pay Broker a commission . . . ."

Another section setting forth the terms merely says, "We will sell property on the following terms: Cash, or other acceptable terms." Reading these two sections together, it can well be argued that, on the face of the

document, the terms require payment in full during the period of the contract. This is the position of the appellant. On the other hand, it can be argued, as does the respondent, that the plain meaning of the clause is merely to find a purchaser during the term of the contract who it appears will reasonably be able at a later date to make the payments required by the contract.

It is apparent that both positions are to some degree supportable from the very words of the contract. While we are inclined to agree with the interpretation placed upon the phraseology by the appellant Chrislaw, we cannot say that the contract is unambiguous.

It is established in this court that:

"The listing agreement having been a printed form supplied by the plaintiff broker, the same must be most strongly construed against the broker in case of any ambiguity or doubt. 12 Am. Jur., Contracts, p. 795, sec. 252; 17 C. J. S., Contracts, p. 751, sec. 324." *Dunn & Stringer Investment Co. v. Krauss* (1953), 264 Wis. 615, 619, 60 N. W. (2d) 346. See also *Nordale Realty Co. v. Hanel* (1947), 251 Wis. 136, 141, 28 N. W. (2d) 245; *E. M. Boerke, Inc., v. Williams* (1965), 28 Wis. (2d) 627, 634, 137 N. W. (2d) 489.

The facts of this case indicate that the printed form for the listing contract was supplied by the broker's salesman and the strikeouts and interlineations were made by the salesman and should be construed against the scrivener of the contract. We, therefore, are obliged to construe this contract to require that the purchaser pay cash within the lifetime of the contract and not merely be one who seeks time in which to obtain the purchase price. This contract made no provision for the possibility of any closing date after the expiration of the listing contract and if this hiatus in the contract required that a subsequent date was to be negotiated, the terms of such negotiations were completely within the control of the seller. We have held:

"It is also settled that when the principal has furnished the broker with only part of the terms with an understanding that further details are subject to negotiation between the principal and the prospective buyer the principal may terminate such negotiations without liability to the broker." *Nordale Realty Co. v. Hanel, supra,* at page 138; *Henschell v. J. L. Gates Land Co.* (1911), 146 Wis. 140, 131 N. W. 423; *Grinde v. Chipman* (1921), 175 Wis. 376, 378, 185 N. W. 288.

Am. Jur. notes on this subject:

"Where the listing agreement fails to fix the terms for the sale or exchange of property, or specifies only part of the terms with the understanding that further details are subject to negotiation between the principal and the customer, the principal has been held free to terminate the negotiations without liability to the broker. Moreover, in such a case the broker may be denied compensation unless he produced a customer ready, able, and willing to buy on such terms as the principal may require, or as he accepts, or unless the principal and the customer reach a definitive oral or written agreement." 12 Am. Jur. (2d), Brokers, p. 929, sec. 187.

There is no evidence that the vendor's refusal to negotiate further on a closing date is evidence of bad faith which might, in some circumstances, exonerate the broker from the above rule. The offer upon which the broker makes his claim for commission was submitted at the very end of the listing contract's term. There was evidence that the defendant indicated from the very outset that he needed his money promptly to set up a new farming operation in a southern state. In view of these facts and his adamant refusal from the time of the first offer to accept a later closing date, it cannot be said that the record supports a finding of bad faith.

The plaintiff also argues that, if there are discrepancies between a listing contract and an offer to purchase, the seller waives the discrepancy if he remains silent or objects on other grounds. This position finds support

as a matter of law in the decided cases of this jurisdiction. *Moss v. Warns* (1944), 245 Wis. 587, 591, 15 N. W. (2d) 786; 12 C. J. S., Brokers, p. 224, sec. 95.

No doubt, any variance of any materiality had to be called to the broker's attention by the vendor or, under the law of this state, it could be deemed waived. However, a review of the record in this case indicates that the seller Chrislaw, once he had received an offer that agreed in price with his asking figure, vehemently and colorfully insisted that he wanted to "have the money, cash money, before our contract expired, according to the terms of the contract" and that he wanted $100,000 on his kitchen table.

The trial judge concluded that the insistence of Chrislaw in receiving the money prior to the termination of the contract was unreasonable. However, he based that determination upon his conclusion that, as a matter of law, Chrislaw was not entitled to the cash prior to the termination of the contract. With this legal conclusion we disagree. We therefore cannot conclude, based upon the facts of this case, that Chrislaw's conduct was unreasonable. While many sellers might well have been satisfied to wait only a short period of time to consummate a real-estate transaction involving $100,000, Chrislaw had the right to stand upon his contract as penned by the real-estate broker. Had the broker foreseen, as well he might have, that there was the possibility that a potential purchaser might be unable to close the transaction during the life of the contract, he could have provided for such exigency by an express provision of the contract were such a provision agreeable to the vendor. However, as this contract was drafted, we conclude that the purchaser, in order to qualify as a purchaser for cash, should have been ready, willing, and able to make payment in full before the listing contract expired.

*By the Court.*—Judgment reversed.

HALLOWS, J. (*dissenting*). I do not read the listing contract as requiring the cash sale to be consummated within the listing period. I think such a sale is made upon the acceptance of the offer and the offer should have been accepted. It was within the terms of the listing and the trial court was correct in holding that the sale could be closed within a reasonable time after the expiration of the listing. The majority view that a cash sale under an ordinary real-estate listing contract must be consummated within the listing period is neither realistic nor in keeping with real-estate practice. The cash sale means the seller will receive cash and will not be required to finance even a part of the purchase price by the acceptance of a mortgage or other security. Whether a sale is cash or not, the closing details take time.