IN the MATTER OF the ESTATE OF Clifford A. CZERNIEJEW-
SKI, deceased;

Yvonne PINDEL, Appellant,

v.

Leroy CZERNIEJEWSKI, Personal Representative of the
Estate of Clifford A. Czerniejewski, Respondent.

Court of Appeals

*No. 93–2042. Submitted on briefs March 1, 1994.—Decided
June 14, 1994.*

(Also reported in 519 N.W.2d 702.)

For the appellant the cause was submitted on the briefs of *William P. McGovern* of Milwaukee.

For the respondent the cause was submitted on the briefs of *Bruce A. Tammi* of Milwaukee.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

WEDEMEYER, P.J.   Yvonne Pindel appeals from a final order denying specific performance of an alleged agreement creating joint and mutual wills. Pindel claims trial court error as a matter of law in not concluding that Angel and Clifford Czerniejewski had an agreement for the disposition of their estates. Because the trial court did not err in concluding that no agreement existed between the Czerniejewskis, we affirm.

## I.  BACKGROUND

On May 10, 1991, Clifford A. Czerniejewski and Angeline, his wife, executed joint wills. The effect of this transaction was that they bequeathed all of the property of each to the surviving spouse and provided, in the event of the predecease of the other spouse, six specific bequests of $5,000 to six different legatees, and the residue to their son, LeRoy Czerniejewski. At the time the wills were signed, Clifford's will was improperly executed in that only one other person witnessed the signing.

Angeline died on December 1, 1991, while Clifford died May 12, 1992. Because all of their property was jointly owned, Clifford succeeded Angeline by right of survivorship, i.e., by operation of law. When Clifford died five months later, his will was filed for admission to probate, but was rejected by court order because it was improperly executed. As a result, an intestacy administration of Clifford's estate was commenced.

894

The effect of the administration proceeding was to make LeRoy, the parties' son, the sole heir-at-law. Pindel, a specific legatee, filed a claim to enforce what she claimed was an oral third-party beneficiary contract not to revoke which, in effect, would enforce the specific bequest of the joint wills. The trial court denied the claim and Pindel now appeals.

## II. DISCUSSION

Section 853.13, STATS., provides as follows:

(1) A contract not to revoke a will can be established only by: (a) provisions of the will itself sufficiently stating the contract; (b) an express reference in the will to such a contract and evidence proving the terms of the contract; *or (c) if the will makes no reference to a contract, clear and convincing evidence apart from the will.* (Emphasis added).

(2) This section applies to a joint will (except if one of the testators has died prior to April 1, 1971) as well as to any other will; there is no presumption that the testators of a joint will have contracted not to revoke it.

A reasonable reading of the statute provides that a contract not to revoke a will can be established only by: (a) provision in the will sufficiently stating the contract; (b) explicit reference in the will to such a contract and evidence proving the terms of the contract; or (c) if there is no reference in the will to such a contract, the presentation of clear and convincing evidence that a contract exists.[1]

---

[1] The Comment to § 853.13, STATS., provides:

This section was intended to clarify the nature of former 238.19 and also to remove any inference that joint wills are made pursuant to a contract not to revoke such wills. In the latter respect this changes the former law as expressed in the exception in former 238.19 and the cases stemming from Doyle v. Fischer, 183 Wis. 599,

198 N.W. 763 (1924) (joint will construed as strong evidence of underlying contract). In the recent case Estate of Hoeppner, 32 Wis. 2d 339, 145 N.W.2d 754 (1966) the Supreme Court felt bound to follow the precedent, but Justice Gordon (concurring) urged corrective legislation.

Former section 238.19 was enacted in 1957 as the result of concern by some attorneys that the marital deduction under the federal estate tax law might be lost when a husband and his wife executed separate wills at the same time. The concern was that the Internal Revenue Service might contend that such wills were executed pursuant to contract or agreement that the surviving spouse would not change her will, hence that she took subject to a trust, and the husband's bequest to her was a terminable interest which did not meet the requirements of IRC 2040. It now appears that, even if there were an express agreement, the marital deduction would be allowed; but it may be necessary to litigate the issue in the federal courts. Estate of Emmet Awtry v. Comm'r, 221 F.2d 749 (8th Cir. 1955); Newman v. United States, 176 F.Supp. 364 (S.D.Ill.1959); Schildmeier v. United States, 171 F.Supp. 328 (S.D.Ind.1959). The tax matter is, however, still not completely free from doubt. See Note 55 N.W.L.Rev. 727 (1961). The former statute was ambiguous. Did it create a presumption, or was it a requirement (similar to the Statute of Frauds) that the contract must be referred to on the face of the will to be enforceable? Suppose, for example, that a husband and wife executed separate wills containing no mention of a contract but they also executed a written contract whereby each promised not to revoke his or her will without the consent of the other. If former 238.19 were merely a rule of construction (as indicated by the word "construed"), the contract could be proved by the written agreement. But if so, an oral contract could also be proved by extrinsic evidence in a proper case. Under this interpretation, former 238.19 merely removed any inference that there was a contract arising from similarity of terms of two wills executed at the same time. This section has been reworded to make it clear that no substantive requirement is involved, but merely an evidentiary requirement.

The former judicial rule, indirectly endorsed by the provisions of former 238.19 which except joint wills, making it easier to infer a contractual arrangement where there was a joint will needed to be changed. In the first place, joint wills were sometimes used without any intent to make a binding promise not to revoke such wills; and in any event the former rule tended to invite litigation in joint will cases. This section, requiring clear and convincing evidence "apart

Since both Angeline and Clifford died after April 1, 1971, we must look to § 853.13(1), STATS., to determine if the 1991 joint wills were contractual.

■

Neither will in this case makes any reference to a contract not to revoke. Consequently, to establish the existence of such a contractual agreement, the burden rests on the proponent of such a contract to affirmatively prove its existence by clear and convincing evidence not contained in the wills as provided in § 853.13(1)(c), STATS.

The hearing on the motion to allow the claim consisted of the testimony of only one witness, the lawyer who drafted both wills and who was present when Angeline and Clifford executed them. As set forth in the record by the trial court, the Czerniejewskis' lawyer testified Angeline advised him she and her husband had decided between themselves they would each leave a will and that each would bequeath everything that person had to the other. Further, upon the death of the last of them, the assets of the parties would be distributed to certain designated beneficiaries by way of specific cash bequests with the residue passing to LeRoy.

---

from the will", destroys any inference that joint wills are pursuant to contract, any more than any other wills. But persons are free to make a contract not to revoke joint wills, just as they can contract not to revoke mutual wills or ordinary wills.

In *In re Estate of Chayka*, 47 Wis. 2d 102, 105 n.1, 176 N.W.2d 561, 563 n.1 (1970), the following appears: "It should be noted that the new probate code alters the principle that an inference of a contract arises from the fact of a joint will. Section 26 of ch. 309, Laws of 1969, creates § 853.13, STATS., but is not effective until April 1, 1971, ch. 393, Laws of 1969."

The hearing testimony also revealed that Angeline advised her lawyer that neither one of them was interested in changing the substance of their wills. The lawyer, in turn, advised that they could always change the wills by mutual consent. Prior to executing the wills, the lawyer asked them, "Is this the way you want it?" Angeline replied, "Yes, we agreed amongst ourselves that's the way we want it." Angeline then asked if they could modify the wills if they desired to make any slight changes. The lawyer replied affirmatively, but again explained that "it should be by mutual consent." Both Angeline and Clifford then signed their wills in the presence of a neighbor and their lawyer. It was at this juncture that the lawyer overlooked signing Clifford's will as a witness. There was no other substantive testimony at the motion hearing.

On review of a factual determination made by a trial court without a jury, an appellate court will not reverse unless the finding is clearly erroneous. *See* § 805.17(2), STATS.; *Noll v. Dimiceli's, Inc.*, 115 Wis. 2d 641, 643, 340 N.W.2d 575, 577 (Ct. App. 1983). This court, however, "is not bound by a finding of the trial court which is based upon undisputed evidence when the finding is essentially a conclusion of law." *Boutelle v. Chrislaw*, 34 Wis. 2d 665, 673, 150 N.W.2d 486, 490 (1967). When, however, the trial court acts as the finder of fact it is the ultimate arbiter of both the credibility of the witnesses, *Gehr v. City of Sheboygan*, 81 Wis. 2d 117, 122, 260 N.W.2d 30, 33 (1977), and the weight to be given to each witness' testimony, *Milbauer v. Transport Employes' Mut. Benefit Soc'y*, 56 Wis. 2d 860, 865, 203 N.W.2d 135, 138 (1973). This is especially true because the trier of fact has the opportunity to observe the witnesses and their demeanor on

the witness stand. In *State v. Friday*, 147 Wis. 2d 359, 370-71, 434 N.W.2d 85, 89 (1989), the supreme court declared, "[t]he drawing of an inference on undisputed facts when more than one inference is possible is a finding of fact which is binding upon an appellate court. It is not within the province of this court or any appellate court to choose not to accept an inference drawn by a factfinder when the inference drawn is a reasonable one."

Pindel asserts, contrary to the trial court's conclusion, that she did satisfy by clear and convincing evidence the creation of a contract to make mutual and reciprocal wills. In doing so, she points to the testimony of Czerniejewski's lawyer and refers us to *Pederson v. First National Bank*, 31 Wis. 2d 648, 143 N.W.2d 425 (1966), and *Allen v. Ross*, 199 Wis. 162, 225 N.W. 831 (1929) — cases where the testimony of the testimonial scrivener was deemed sufficient to prove the existence of a contract to execute mutual and reciprocal wills. We conclude these cases are distinguishable from our present factual scenario.

In *Pederson*, the supreme court did reverse the trial court's conclusion that the evidence presented was not sufficiently clear and convincing to establish an agreement. In *Pederson*, unlike the evidentiary circumstances of this appeal, the existence of the agreement was conceded; the challenge was to the sufficient quantum of evidence to establish the contents of the agreement. The scrivener lawyer testified with some uncertainty as to the agreement, but an acquaintance of both decedents and a business associate of one of them corroborated that the contents of the agreement stated that the wills "were not to be changed without mutual consent."

The *Allen* case concerned a mother and daughter who together went to an attorney and explained to the attorney their agreement that the survivor of either should have the property of the other and when they had both died, they wanted their property to go to Tommy Allen. The attorney advised them to execute individual wills by which each gave all of her property to the other and which provided that in case the one making the will survived, she devised all of her property to Allen. The attorney who drafted the wills also served as a subscribing witness. The trial court concluded, and the supreme court affirmed, that the property subject to dispute was impressed with a trust in favor of Allen which emanated from the surviving mother's agreement to make a reciprocal will since she had accepted the benefits of the will of her daughter who had predeceased her. The supreme court was satisfied with the trial court's conclusion that mother and daughter had reached a mutual agreement that the survivor should keep and enjoy all the property possessed by the other and that on the death of the survivor, all the property of both these women should go to Allen.

In this case, from our review of the trial court's memorandum decision, we cannot discern the same certitude that the supreme court found in *Allen*. Here the trial court determined, factually, that the testifying scrivener "at no time ever asked Clifford whether or not his intention was to create a contractual obligation nor did he inquire whether or not Clifford understood the implications of contractual wills." Further, unlike *Pederson*, there was no corroboration as to the contents of the agreement.

To further lend support for her proposition that an agreement had been created to execute mutual and

reciprocal wills, Pindel refers us to the case of *In re Estate of Hoeppner*, 32 Wis. 2d 339, 145 N.W.2d 754 (1966). *Hoeppner* is the last decision by the supreme court which indulged in the up-to-the-present traditional inference that joint wills were made in furtherance of a contract not to revoke such wills. In *Hoeppner*, the supreme court felt obliged, on the basis of *stare decisis*, to conclude that a bare-bones agreement existed to execute mutual wills. The cautionary reservation voiced in the concurring opinion about the usage of such an inference, however, precipitated the enactment of § 853.13, STATS., which eliminated this inference. We thus deem that *Hoeppner* has no precedential value for disposing of the issues presented in this appeal.

Here, the trial court found that Czerniejewski's lawyer did not ask Clifford whether or not his intention was to create a contractual obligation, nor did he inquire as to whether Clifford understood the implications of a contractual will. Further, the trial court found that there was no evidence demonstrating a meeting of the minds. With these findings, it concluded that the claimant had failed to meet her burden of proof by clear and convincing evidence as required by the statute that a contractual agreement had been reached. The inferential finding that the necessary elements of a contract were not present is not a legal conclusion reviewed *de novo*, but was a finding of fact to which full deference must be awarded unless unreasonable. We are reminded of the baseball analogy: "Even though the witness' testimony is a factual' narrative, the oral testimony is not fact'; it ain't nothin', till

the fact finder calls it.' "[2] Although as a finder of fact, we may have made opposite determinations, we cannot say that the trial court's explicit findings of fact, as well as its inferential findings of fact supporting its conclusion of law were unreasonable.

*By the Court.*—Order affirmed.

---

[2] RUGGERIO J. ALDISERT, THE JUDICIAL PROCESS 693 (1976).