Michael PRIES,
Plaintiff-Respondent-Cross-Appellant,

v.

Raymond McMILLON,
Defendant-Appellant-Cross-Respondent,†
ABC INSURANCE COMPANY, Defendant.

Court of Appeals

*No. 2008AP89. Submitted on briefs September 18, 2008.
—Decided October 28, 2008.*

**2008 WI App 167**

(Also reported in 760 N.W.2d 174.)

† Petition to review pending.

706

On behalf of the defendant-appellant and cross-respondent, the cause was submitted on the briefs of *J.B. Van Hollen,* attorney general and *James McCambridge,* assistant attorney general.

On behalf of the plaintiff-respondent and cross-appellant, the cause was submitted on the briefs of *Anthony J. Skemp* of *Domnitz & Skemp, S.C.* of Milwaukee.

Before Fine, Kessler and Brennan, JJ.

¶ 1. KESSLER, J. Raymond McMillon[1] appeals from a judgment, entered after a bench trial, in favor of

---

[1] The defendant-appellant-cross-respondent's name is identified as "Ray McMillion" in the case caption and throughout much of the record. However, the transcripts of his deposition and the trial indicate that the correct spelling of his full name is Raymond McMillon. We use the correct spelling in this opinion, and we have directed the Clerk of the Court of Appeals to amend the caption accordingly. Upon remittitur, the trial court should correct the judgment to reflect the correct spelling of Raymond McMillon's name.

Michael Pries, who was injured at the Wisconsin State Fair Park when some metal horse stalls fell on him. McMillon, an employee of the Wisconsin State Fair Park, argues he is immune from liability under the common law doctrine of immunity for state employees ("discretionary act immunity").[2] He contends that the trial court erred when it concluded that the ministerial duty exception to discretionary act immunity applied. Pries cross-appeals, arguing that the trial court erroneously concluded that the known danger exception to discretionary act immunity did not apply. We affirm the judgment in favor of Pries because we conclude that the known danger exception to discretionary act immunity applies. We do not consider whether the ministerial duty exception also applies. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) (Cases should be decided on the narrowest possible grounds.); *State v. Gribble*, 2001 WI App 227, ¶ 27 n.10, 248 Wis. 2d 409, 636 N.W.2d 488 ("[W]e may affirm a trial court's ruling on a question of law on a different ground than that relied on by the trial court.").

## BACKGROUND

¶ 2. This case involves a judgment for injuries Pries sustained on September 18, 2005, in the horse barn of the Wisconsin State Fair Park when sections of metal horse stalls fell on him. At the time of the accident, Pries was one of approximately twelve in-

---

[2] Wisconsin courts considering the common law immunity granted to state employees, as well as the statutory immunity granted to municipal employees, have referred to that immunity using a variety of names, such as governmental immunity, public officer immunity, public employee immunity and discretionary act immunity. In this opinion we use the term discretionary act immunity.

mates from the House of Correction who had been selected to assist with disassembling the stalls. The wall-mounted horse stalls were made up of four steel sections: a front, back and two sides, each of which was approximately ten feet high and ten feet wide. Each piece of the stall was quite heavy, requiring multiple people to lift it. The pieces of the stalls were connected by pins which had to be removed during disassembly. The sides and back of each stall were chained to a wall so that when the pins were removed the pieces of the stalls would not fall over. There were ten to twelve stalls placed next to one another.

¶ 3. It appears undisputed that the proper method of disassembly of a wall-mounted horse stall requires removal of the front of the stall first, leaving the back and sides still chained to the wall. Next, each side is removed after it is unchained and workers hold it to prevent it from falling. Finally, the back panel of the stall is removed with workers again holding it up as it is unchained, to prevent it from falling. If the chains holding a stall are removed and workers are not holding the pieces of the stall in place, the pieces of the stall fall.

¶ 4. According to testimony from Pries, another inmate worker and the correctional officer who supervised them, numerous sections of the stalls fell after a Wisconsin State Fair Park employee, McMillon, tried to loosen a piece of a stall by standing or jumping on it and then shaking it. At the time the sections fell, they were not chained to the wall. Although McMillon later denied he was even near the stalls when they began to fall, it is undisputed that Pries was injured when sections of the stalls fell on him. Pries suffered a broken foot and other injuries.

¶ 5. Pries sued McMillon and Wisconsin State Fair Park's liability insurer, alleging that Pries was

711

injured when McMillon, while in the scope of his employment, unexpectedly and negligently jumped on top of a metal horse stall, causing it to collapse and fall on Pries.[3]

¶ 6. McMillon filed motions to dismiss and for summary judgment, asserting discretionary act immunity; both were denied.[4] The case proceeded to trial before the court. The supervising correctional officer, Ross W. Stein, testified that he was supervising the inmates as they disassembled the stalls and disconnected them from the walls. He said the inmates were struggling to remove the stalls and McMillon came over to where the inmates were and said "something to the effect of [']this is how we take it apart[']." In its findings, the trial court summarized Stein's testimony about what happened next: "Stein testified he saw McMillon standing on the bar [of the stall] right before the accident . . . . The bar appeared to be jammed, McMillon was trying to loosen it, and Stein saw McMillon push the bar out." Stein testified that what followed was a "devastating" accident where the horse stalls started falling down like dominoes, causing the inmates to run to get out of the way. Stein said one of the stalls fell on Pries, causing his injuries.

¶ 7. Pries testified that he and several other inmates were taking down the stalls along the wall and

[3] The Milwaukee County Department of Health and Human Services was also briefly a defendant based on certain payments it made for Pries's medical care, but it was dismissed.

[4] These motions were denied by the Honorable Francis T. Wasielewski. The transcripts of the motion hearings, which contain the reasons for the court's decisions, are not included in the record. Therefore, we will not discuss them. Due to judicial transfer, the case was later assigned to the Honorable Michael B. Brennan, who conducted the bench trial and issued the judgment at issue on appeal.

they got to a stall that they had difficulty removing. Pries described what happened when McMillon approached:

[H]e said, ["]you guys having a hard time with this?["] He says, ["]let me show you how we do it,["] and . . . he said that the chains shouldn't have been removed and then he just went ahead and jumped up on the fence and started jerking it up and down.

Pries said the stalls fell almost immediately and that his foot got trapped underneath one of the stalls.

¶ 8.  Another inmate, Luis Galvan, testified consistent with a short written report he drafted just after the accident. In that report, which was admitted into evidence, Galvan wrote that he and others were removing the chains from the stalls when a Wisconsin State Fair Park employee (who the trial court determined was McMillon) approached and "told [them] that the [stalls] could fall, then told [them] that he knew a better way." Galvan's report stated that McMillon "got on top" of a section of a stall "and began to shake it," which caused numerous sections of the stalls to fall.

¶ 9.  In contrast to this testimony, McMillon testified that he did not jump on or shake the stall. He said that he was not working by the stalls that fell, and had instead been working about sixty feet away in a different area of the barn with other inmates. He said that his attention was drawn to Pries and the inmates working with him because the inmates were "taking down the chains and there was no one holding up the stalls." McMillon said he was thirty to thirty-five feet away when the stalls began to fall, and that he ran toward them to try to stop them from falling.

¶ 10.  The trial court weighed the witnesses' credibility and determined that Pries was more credible

than McMillon, and that McMillon's actions caused the stalls to fall. The trial court's written decision stated:

> [T]he Court found plaintiff Pries's recitation of the events to be more credible than defendant McMillon's because plaintiff Pries's version of the events was corroborated by witnesses Stein and Galvan. The greater weight of the credible evidence to a reasonable certainty is that defendant McMillon was jumping on the stalls to loosen them before the stalls toppled and injured plaintiff Pries.

The trial court further found that McMillon's actions violated the written instructions for the assembly and disassembly of the stalls. The court found that McMillon was liable for Pries's injury, stating:

> Chains necessary for holding the stalls together were disconnected. Defendant McMillon jumped on the stalls anyway.
>
> . . . Defendant McMillon saw the inmates having problems, defendant McMillon was aware the stalls were stuck, he was aware the chains were undone, and was aware that inmates were standing next to the stuck stall. Defendant McMillon was negligent to jump on the stalls, which created danger, the stalls fell, and plaintiff was injured by the falling stalls.

¶ 11.   The trial court in its written decision next considered whether exceptions to discretionary act immunity applied. It concluded that the ministerial duty exception applied, but that the known danger exception did not. It granted a total judgment in Pries's favor of approximately $20,000.

¶ 12.   McMillon now appeals, arguing that the ministerial duty exception does not apply. Pries cross-appeals, arguing that in the event this court concludes

that the ministerial duty exception does not apply, we should still affirm the judgment because the known danger exception applies.

## STANDARD OF REVIEW

¶ 13.  This case was tried to the court. "On review of a factual determination made by a trial court without a jury, an appellate court will not reverse unless the finding is clearly erroneous." *Pindel v. Czerniejewski*, 185 Wis. 2d 892, 898, 519 N.W.2d 702 (Ct. App. 1994); *see also* WIS. STAT. § 805.17(2) (2005–06).[5] The trial court is the "ultimate arbiter of both the credibility of the witnesses" and "the weight to be given to each witness' testimony." *Pindel*, 185 Wis. 2d at 898. In contrast, whether immunity lies because of the common law doctrine of public officer immunity (discretionary act immunity) is a question of law that we review *de novo. Kimps v. Hill*, 200 Wis. 2d 1, 8, 546 N.W.2d 151 (1996).

## DISCUSSION

¶ 14.  At issue is the applicability of two exceptions to discretionary act immunity:  the ministerial duty exception and the known danger exception. We conclude that the known danger exception to discretionary act immunity applies and that McMillon is therefore not immune from liability. We begin our discussion with an overview of discretionary act immunity and the two exceptions at issue.

[5] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

## I.  Discretionary act immunity and judicially created exceptions.

■■

¶ 15.   The general rule, grounded in common law, is that "state employees are immune from personal liability for injuries resulting from acts performed within the scope of their official duties." *Umansky v. ABC Ins. Co.*, 2008 WI App 101, ¶ 16, 313 Wis. 2d 445, 756 N.W.2d 601 (citing *Kimps*, 200 Wis. 2d at 10). When a state employee asserts discretionary act immunity as a defense, the analysis "assumes negligence and focuses on whether the action or inaction upon which liability is premised is entitled to immunity." *Id.*

■

¶ 16.   Wisconsin has recognized exceptions to discretionary act immunity that generally apply where state employees assert immunity under the common law and where municipal employees assert immunity pursuant to Wisconsin's governmental immunity statute, WIS. STAT. § 893.80(4).[6] *Umansky*, 2008 WI App 101, ¶ 16 n.8; *see also Meyers v. Schultz*, 2004 WI App 234, ¶ 12 n.5, 277 Wis. 2d 845, 690 N.W.2d 873 ("[T]he concepts and theories underlying immunity and its exceptions are generally the same for state and municipal officers and employees."). The four exceptions to

_____

[6] WISCONSIN STAT. § 893.80(4) provides:

No suit may be brought against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employees nor may any suit be brought against such corporation, subdivision or agency or volunteer fire company or against its officers, officials, agents or employees for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

discretionary act immunity apply to: (1) ministerial duties imposed by law; (2) duties to address a known danger; (3) actions involving professional discretion; and (4) actions that are malicious, willful and intentional. *Scott v. Savers Prop. & Cas. Ins. Co.*, 2003 WI 60, ¶ 16, 262 Wis. 2d 127, 663 N.W.2d 715. Only the first two exceptions are at issue in this case.

¶ 17. The first exception concerns ministerial duty, which has been defined as a duty that " 'is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion.' " *Lodl v. Progressive N. Ins. Co.*, 2002 WI 71, ¶ 25, 253 Wis. 2d 323, 646 N.W.2d 314 (citation omitted). "If liability is premised upon the negligent performance (or non-performance) of a ministerial duty imposed by law or government policy, then immunity will not apply." *Id.*, ¶ 26.

¶ 18. The second exception, concerning known dangers,[7] applies where dangerous circumstances give rise to a ministerial duty to act. *See id.*, ¶ 34. *Lodl* explained that in the context of known dangers,

the ministerial duty arises not by operation of law, regulation or government policy, but by virtue of par-

---

[7] At times, cases refer to the exception as the "known and compelling danger exception." *See, e.g., Lodl v. Progressive N. Ins. Co.*, 2002 WI 71, ¶ 39, 253 Wis. 2d 323, 646 N.W.2d 314. No court decision of which we are aware has suggested this longer term is substantively different than the term "known danger exception." For purposes of this opinion, we will use the term "known danger exception."

ticularly hazardous circumstances—circumstances that are both known to the municipality or its officers and sufficiently dangerous to require an explicit, non-discretionary municipal response. If liability is premised upon the negligent performance (or non-performance) of a ministerial duty that arises by virtue of a known and compelling danger, then immunity will not apply.

*Id.*, ¶ 39. Stated differently, *Lodl* emphasized that "a dangerous situation will be held to give rise to a ministerial duty only when 'there exists a known present danger of such force that the time, mode and occasion for performance is evident with such certainty that nothing remains for the exercise of judgment and discretion.'" *Id.*, ¶ 38 (citation omitted). *Lodl* also recognized that the applicability of the known danger exception is determined on a case-by-case basis. *See id.*

¶ 19. The known danger exception to discretionary act immunity was first announced in *Cords v. Anderson*, 80 Wis. 2d 525, 259 N.W.2d 672 (1977), where the court held that a park manager who was aware of a ninety-foot unguarded gorge that presented a danger to hikers but who failed to place a warning sign or advise his supervisors of the condition was not immune from suit. *See id.* at 538–41. *Cords* "held that the compellingly dangerous circumstances established a duty to warn that was 'so clear and absolute that it [fell] within the definition of a ministerial duty.'" *Lodl*, 253 Wis. 2d 323, ¶ 33 (quoting *Cords*, 80 Wis. 2d at 542).

¶ 20. Subsequent to *Cords*, several cases have found that the known danger exception to discretionary act immunity applies,[8] including where a sheriff's de-

[8] Efforts to apply the known danger exception have often failed, as we recently observed in *Umansky v. ABC Ins. Co.*, 2008 WI App 101, ¶ 67, 313 Wis. 2d 445, 756 N.W.2d 601

partment dispatcher failed to have the department investigate a nighttime report of a downed tree or notify the town so it could investigate, *see Domino v. Walworth County*, 118 Wis. 2d 488, 490–91, 347 N.W.2d 917 (Ct. App. 1984); where a teacher conducting a class exercise using vision goggles that distort vision failed to take any precautions to prevent injury or stop the activity, *see Voss v. Elkhorn Area Sch. Dist.*, 2006 WI App 234, ¶¶ 19–22, 297 Wis. 2d 389, 724 N.W.2d 420; and where paramedics failed to attempt an immediate rescue of the occupant of a submerged van, *see Linville v. City of Janesville*, 174 Wis. 2d 571, 586–88, 497 N.W.2d 465 (Ct. App. 1993).

## II. Application of the known danger exception.

¶ 21.   Pries argues that the known danger exception to discretionary act immunity applies here, where McMillon knew that the stalls were heavy and could fall and injure someone if he jumped on them when the chains were removed, and yet jumped on an unchained section of a stall anyway, causing the stalls to fall and injure Pries. Pries contends that the existence of the unchained stalls was a dangerous situation that gave rise to the ministerial duty to:   (1) instruct the inmates to step away and reattach the chains; and (2) refrain from jumping on the unchained stalls.

¶ 22.   McMillon does not appear to dispute the proposition that a ministerial duty to reattach the

("There are very few cases in which courts have concluded the known danger exception applies."). *Umansky* explained:   "The known danger exception as applied in the case law has been reserved for situations that are more than unsafe, where the danger is so severe and so immediate that a specific and immediate response is demanded." *Id.*, ¶ 70.

chains and refrain from jumping on the unchained stalls could arise if he knew that the stalls were unchained. Instead, McMillon argues that there is no evidence he knew before the stalls fell that the chains had been removed. In making this argument, McMillon appears to be contesting the trial court's findings of fact. We reject this argument because we conclude that the trial court's findings—which included its finding that McMillon knew the chains had been removed—are not clearly erroneous.

¶ 23. The trial court explicitly found that McMillon "was aware the stalls were stuck, he was aware the chains were undone, and was aware that inmates were standing next to the stuck stall." These findings are supported by testimony from Pries, Galvan and McMillon. Pries testified that when McMillon came over to help with the stuck stall, McMillon specifically "said that the chains shouldn't have been removed." Galvan wrote in his report that he and others were removing the chains from the stalls when McMillon approached them and "told [them] that the [stalls] could fall, then told [them] that he knew a better way."

¶ 24. McMillon, who denied he ever jumped on the stalls (a claim the trial court found incredible), nevertheless admitted that he saw the stalls fall just after his attention had been drawn to Pries and several other inmates because "[t]hey [were] taking down the chains and there was no one holding up the stalls." In addition, McMillon admitted on cross-examination that he "noticed before the stall in question fell that the chains had been removed" and that he "knew that if the chains holding those back stalls to the wall had been removed, they could fall." McMillon also acknowledged his deposition testimony that he saw two inmates about to take down a stall without the chains and "ran down

there as soon as [he could] and hollered . . . ['N]o, don't do that.[']" Finally, the one-page written report that McMillon prepared the day after the accident was admitted into evidence without objection. In that report, McMillon wrote:

> There were two groups of inmates taking down the stall pieces on the south wall that is split by an overhead door opening. I was going back and forth between the two groups reminding them that if they took down the bolts and chains before they removed the stall pieces that they needed to have someone hold them up or they would fall. I had just moved from the group on the westside of the south wall to the group on the eastside. As I was walking to the east group I noticed that the westside group was taking down some of the bolts and chains. As I was walking back to check on them 2 inmates started taking off one of the stall pieces and before I reached them the remaining stall pieces began to fall, around a total of 10 stall pieces. The reason the stalls fell was because the inmates took down all the bolts and chains on the westside of the south wall stall pieces, even after [I told] them that if they did that the pieces would fall.

Based on this evidence, we conclude that the trial court's findings that McMillon knew the chains had been removed and jumped on the stall anyway, are not clearly erroneous.

¶ 25. Furthermore, we agree with Pries that a ministerial duty arose when McMillon saw that the chains had been removed. The removal of the chains had created a "dangerous situation" that gave rise to a ministerial duty to act because there existed " 'a known present danger of such force that the time, mode and occasion for performance [was] evident with such certainty that nothing remain[ed] for the exercise of

721

judgment and discretion.' " *See Lodl*, 253 Wis. 2d 323, ¶ 38 (citation omitted). Like the teacher in *Voss* who should have put an end to a classroom exercise after numerous students were stumbling and falling, *see id.*, 297 Wis. 2d 389, ¶ 20, it should have been self-evident to McMillon that once he saw the chains had been removed, he had a ministerial duty based on the known danger to stop the disassembly until the chains were reattached and to not jump on the unchained stall. Accordingly, the known danger exception to discretionary act immunity applies.

## CONCLUSION

¶ 26.  We conclude that the known danger exception to discretionary act immunity applies in this case. Therefore, McMillon is not immune from liability and the judgment is affirmed.

*By the Court.*—Judgment affirmed.

¶ 27.  FINE, J. (*dissenting*). In my view, the Majority expands the exceptions to the rule of governmental immunity in tort actions so that the exceptions have smothered the rule. Accordingly, I respectfully dissent.

¶ 28.  The trial court found that Raymond McMillon "negligently jumped on the stalls, causing their collapse and subsequently plaintiff Pries's injury." The Majority holds that this simple act of negligence violated a "ministerial duty" because "[t]he removal of the chains had created a 'dangerous situation.' " Majority, ¶ 25. This expands the "known danger" exception beyond all recognition and will make governmental entities and persons liable for *any* negligent act because negligence is *only* actionable at all *if* the actor does something that "create[s] an unreasonable risk of dan-

ger." *Johnson v. Misericordia Cmty. Hosp.*, 99 Wis. 2d 708, 723, 301 N.W.2d 156, 164 (1981). On the other hand, "[t]he known danger exception as applied in the case law has been reserved for situations that are more than unsafe, where the danger is so severe and so immediate that a specific and immediate response is demanded." *Umansky v. ABC Ins. Co.*, 2008 WI App 101, ¶ 70, 313 Wis. 2d 445, 488, 756 N.W.2d 601, 623. I respectfully submit that the facts of this case—a run-of-the-mill negligence action—fall far short of that standard.