In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-1695

CHRISTOPHER S. STRECKENBACH,

*Plaintiff-Appellant,*

*v.*

CHARLES VANDENSEN, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 15-C-451 — **Rudolph T. Randa**, *Judge.*

ARGUED AUGUST 8, 2017 — DECIDED AUGUST 21, 2017

Before WOOD, *Chief Judge*, and BAUER and EASTERBROOK, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. In November 2014 Christopher Streckenbach, an inmate of Redgranite Correctional Institution in Wisconsin, left two boxes of personal property for his son to pick up. Under the prison's policy, property on deposit had to be collected within 30 days. If that did not occur, the prison's staff was to ship the property to someone the inmate had designated. But if the inmate's account did

not have enough money to cover shipping costs, the proper-
ty was to be destroyed. The policy warned inmates that they
were responsible for ensuring that their accounts had
enough money on the 30th day. Streckenbach's son did not
retrieve the boxes within the allotted time, and Charles
VanDensen, the sergeant in charge of the mailroom, calcu-
lated a shipping cost of about $9.50, some $2 more than
Streckenbach had available. VanDensen had the property
destroyed. Streckenbach could have covered the shipping
costs had he planned for this expense and anticipated the
possibility that his son would not appear.

Streckenbach contends in this suit under 42 U.S.C. §1983
that VanDensen violated the Due Process Clause of the Four-
teenth Amendment by destroying his property without no-
tice. He maintains that the policy, which Redgranite's war-
den promulgated in 2013, had not been communicated to the
prisoners. Streckenbach contends that he did not see it on
the bulletin board (he asks the court to infer that whatever
he didn't see was not there), that the prison's library had on-
ly an older policy, and that the officer who received his box-
es failed to calculate the shipping charges and warn him that
he must maintain that amount in his account. According to
Streckenbach, the older policy he read in the library provid-
ed that, if the property was not picked up within 30 days,
the staff would ask the inmate how he wanted to proceed.
VanDensen did not do that and, Streckenbach contends,
thereby violated the Constitution.

The district court granted summary judgment to Van-
Densen, giving two reasons. 2016 U.S. Dist. Lexis 36994 (E.D.
Wis. Mar. 21, 2016). The first is that the complaint did not
specify the legal theories that Streckenbach relied on to op-

pose the motion for summary judgment, and the second is that VanDensen has qualified immunity. Neither of those reasons suffices. Complaints need not plead law or spell out theories of liability. *Johnson v. Shelby*, 135 S. Ct. 346 (2014). And immunity depends on legal uncertainty. The proposition that property owners, including inmates, are entitled to notice before their property is destroyed has been established for a long time. See, e.g., *Zinermon v. Burch*, 494 U.S. 113, 132 (1990); *Montanez v. Secretary, Pennsylvania Department of Corrections*, 773 F.3d 472, 484 (3d Cir. 2014).

The problem with holding VanDensen liable is different: it is that he was not responsible for giving notice. The policy called for general notice by posting and specific notice by calculating shipping costs when property was delivered for pickup. We must accept Streckenbach's contention that both means of notice failed in his situation. But that failure cannot be blamed on VanDensen. He was not responsible for managing the bulletin board or the library, and he was not the guard who received the boxes and failed to calculate the shipping charges. All VanDensen did was carry out the policy after no one collected the boxes within 30 days. Streckenbach does not contend that VanDensen miscalculated the shipping charges or the balance in his account. Errors occurred, to Streckenbach's detriment, but they were not VanDensen's errors, and he is not vicariously liable for other persons' mistakes. See, e.g., *Ashcroft v. Iqbal*, 556 U.S. 662, 675–77 (2009); *Vance v. Rumsfeld*, 701 F.3d 193, 203–05 (7th Cir. 2012) (en banc).

Streckenbach maintains that VanDensen did make one mistake: when looking over the paperwork, he should have noticed that the file lacked a shipping-cost calculation made

when the boxes were received; from this absence, Streckenbach insists, VanDensen should have inferred that the guard who received the property failed to alert Streckenbach to the 2013 policy's workings. That's not an inevitable inference. VanDensen might have thought that the guard who received the boxes had notified Streckenbach but failed to fill out all forms. It does not matter which inference is appropriate—or indeed whether VanDensen noticed, or should have noticed, the omission. For this aspect of Streckenbach's argument accuses VanDensen of negligence, and negligent bureaucratic errors do not violate the Due Process Clause. *Daniels v. Williams*, 474 U.S. 327, 336 (1986).

Instead, the remedy (the "process due") for careless blunders that destroy property is litigation, under state law, to recover the property's value. See, e.g., *Parratt v. Taylor*, 451 U.S. 527 (1981), applied by *Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984), to the intentional but mistaken destruction of prisoners' property. And that litigation need not be against the person who made the mistake, a person who might have immunity as a matter of state law even if not as a matter of federal law. See Wis. Stat. §893.80(4) (immunity for state employees who act within the scope of their duties); but see *Pries v. McMillon*, 2008 WI App 167 ¶17 (no immunity for negligent performance or omission of ministerial duties). Wisconsin allows many kinds of tort claims against the state. Wis. Stat. §893.51(1) (claims dealing with destruction of personal property), §893.80(1d) (waiver of immunity). The state requires a claim to be filed with the Attorney General within 120 days of the loss, Wis. Stat. §893.82(3), and Streckenbach missed that deadline, but VanDensen cannot be blamed—nor can a would-be plaintiff avoid *Parratt* by waiting until a state deadline has passed before filing a federal suit. Even

after missing the deadline, Streckenbach has potential state-law remedies against the responsible persons under the theory of *Pries*, though not against the Department of Corrections. See *Mayhugh v. Wisconsin*, 2015 WI 77 (July 10, 2015).

Streckenbach's complaint included as defendants several state employees in addition to VanDensen. The district court dismissed all of the additional defendants at the screening stage, ruling that they were not responsible for the mistakes made by the prison's staff and could not be held vicariously liable for those errors. Streckenbach asks us to remand to allow further proceedings against the defendants who were warden, and deputy warden, of Redgranite in 2013, when the policy was adopted. Administrators might be deemed liable for the consequences of an unconstitutional policy, but the 2013 policy cannot be condemned on the ground that it authorizes property to be destroyed without notice. The policy itself provides for notice—both general notice by posting and specific notice by calculating shipping costs when property is received for pickup. That it does not provide for a *third* notice (after the 30 days have lapsed) does not call its validity into question. Notice matters only when there are choices to be made. Once 30 days have run, the property has not been picked up, and funds to ship it are unavailable, there's no choice left under the 2013 policy.

Counsel for Streckenbach told us at oral argument that the warden could be personally liable because it was foreseeable that subordinates would make operational errors. But that's just an argument for vicarious liability. As we have already explained, the people who make the errors, not the people who devised the policy, are the ones responsible for those errors. *Every* policy, in and out of prison, can be

undermined by operational gaffes. Applications for Social Security disability benefits may be denied erroneously, sometimes without hearings, but this does not imply personal liability for Members of Congress and Administrators of Social Security who devised the policies being misapplied. Zoning laws may be misunderstood and lawful development prevented, producing losses to property owners. People may engage in costly but unnecessary repairs when inspectors misread building codes. Yet these errors do not lead to liability for the persons who wrote the zoning laws or the building codes. See *Vance*, 701 F.3d at 203–05 (majority opinion), 209–10 (Wood, J., concurring).

We grant that some policies lead to more errors than others. The more complex the policy, the more occasions for something to go wrong. The 2013 policy may have been in that category, for it was replaced in 2015 with a simpler rule that remains in effect. Under the 2015 policy inmates who want to get rid of property have two options: ship it at their own expense or have it destroyed. The option to leave the property for pickup has been abolished. The new policy eliminates the risk that inmates will misunderstand their options, since they must pay shipping costs when they drop off the property. It also eliminates an option that some inmates found valuable. Whether the 2015 policy is beneficial for inmates on balance is not a question we need answer. All we hold today is that VanDensen, the prison's warden, and the deputy warden are not personally liable in damages under §1983 for the negligence of other employees, or given *Daniels* even for their own negligence.

AFFIRMED