**COURT OF APPEALS
DECISION
DATED AND FILED**

**February 8, 2023**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2022AP1616-FT**

Cir. Ct. No. **2022SC902**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

ASHLEY CORDES,

PLAINTIFF-RESPONDENT,

V.

VICTOR TREVON GRAY, JR. AND NICOLE LYNN HEERINGA,

DEFENDANTS-APPELLANTS.

APPEAL from an order of the circuit court for Fond du Lac County: ANDREW J. CHRISTENSON, Judge. *Affirmed and cause remanded.*

¶1    LAZAR, J.[1]  Victor Trevon Gray, Jr. and Nicole Lynn Heeringa appeal from a circuit court order for their eviction from a residence they leased

---

[1] The parties submitted memo briefs pursuant to WIS. STAT. RULE 809.17 (2019-20) decided by one judge pursuant to WIS. STAT. § 752.31(2)(a) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

from Ashley Cordes. The trial court held that the "Late Payment Agreement" they negotiated with Cordes was unenforceable, that Cordes was not equitably estopped from proceeding with eviction, and that the five-day[2] notice Cordes served on Gray and Heeringa was sufficient. For the reasons that follow, this court affirms the trial court on all three grounds and remands the matter to the trial court to determine the appropriate date for removal of the tenants.

## BACKGROUND

¶2    Gray and Heeringa entered into a three-year residential lease with Cordes on February 17, 2022. The lease provided that monthly rent of $1,200 was due in advance on the first of each month, with late fees of ten dollars per day (not to exceed $100), and included a three-day notice provision under which the tenants agreed that if they did not pay rent past due within three days (excluding weekends and holidays) after receipt of the landlord's written demand, the landlord could terminate the lease.

¶3    Gray and Heeringa failed to pay their July rent by July 1, 2022. On July 5, Cordes personally served Gray with a five-day notice to pay or vacate "in accordance with [WIS. STAT.] § 704.17." On July 8, Cordes and Heeringa discussed the situation by telephone, determining that Heeringa and Gray could pay $800 that day and $500 by July 16 (amounting to the total $1,300 owed, including late fees) to avoid eviction. After the call, still on the same day, Cordes sent multiple documents to Heeringa and Gray via e-mail for their signatures. These included a "Late Rent Payment Agreement" (providing for the discussed

---

[2] While the lease allows the landlord to send a three-day eviction notice, Cordes used a five-day notice.

payments due July 8 and July 16) as well as two documents titled "Affidavit" (one each for Heeringa and Gray to sign). The affidavits included terms that would allow the tenants to pay their August rent (with late fee) by August 10, 2022, but eliminate their right to make any late payments thereafter: "I understand that if there are any additional late payments on my rent after August 2022 that I will be evicted." In a series of Facebook messages sent on July 8 after the telephone conversation, Cordes explained that she needed "an agreement on everything[.] It is an accumulative thing. Not just one thing." Cordes messaged that she "want[ed] all documents to be completed" on that day.

¶4 Heeringa and Gray signed the Late Rent Payment Agreement and paid $800 on July 8. They refused, however, to sign the affidavits from Cordes. The next morning, on July 9, Cordes explained in additional Facebook messages to Heeringa that Gray and Heeringa's failure to sign the affidavits would result in her not signing the Late Rent Payment Agreement:

> I told you multiple times that if I were to agree to mak[e] this agreement that there would be other stipulations considering all that has happened at this point. You agreed. I have not signed that document for my protection .… If the remaining portion of what we discussed does not get taken care of OR rent is not paid in full OR you are not moved out by Wednesday I will be filing with the court.

¶5 Gray and Heeringa did not sign the affidavits,[3] and Cordes filed suit seeking eviction on August 12, 2022, based on their failure to pay the July rent

---

[3] Gray and Heeringa apparently did eventually sign the affidavits on October 7, 2022, more than a month after trial; the signed affidavits are not part of the record.

3

and late fee by July 10, as required by her five-day notice.[4]  After an eviction trial on August 29, 2022, the trial court held that the July 8, 2022, Late Rent Payment Agreement was not an enforceable contract; that Cordes was not precluded from evicting Gray and Heeringa based on the doctrine of equitable estoppel; and that Cordes's five-day notice was sufficient to terminate the lease under WIS. STAT. § 704.17.  Gray and Heeringa were allowed to stay in the leased residence pending this appeal, in which they challenge all three holdings.[5]

## STANDARD OF REVIEW

¶6      This court reviews the terms of a lease (be it commercial or residential) de novo.  *Walters v. National Props., LLC*, 2005 WI 87, ¶6, 282 Wis. 2d 176, 699 N.W.2d 71; *Westhaven Assocs., Ltd. v. C.C. of Madison, Inc.*, 2002 WI App 230, ¶16, 257 Wis. 2d 789, 652 N.W.2d 819.  The same standard of review applies to the Late Rent Payment Agreement in this case because "[w]hether a written contract is sufficiently definite to be enforceable is generally a question of law."  *See Headstart Bldg., LLC v. National Ctrs. for Learning Excellence, Inc.*, 2017 WI App 81, ¶15, 379 Wis. 2d 346, 905 N.W.2d 147.  "The primary goal in contract interpretation is to 'give effect to the parties' intent, as

---

[4] Gray and Heeringa paid the remaining $500 of July rent (including the $100 late fee) on July 14, prior to the date set in the Late Rent Payment Agreement.  They also contend that, pursuant to WIS. STAT. § 801.15(1)(b) (which states that weekends and holidays are not included in computing time periods of eleven days or fewer), their full payment was due on July 12, 2022.  That is accurate but not relevant because the final payment was made two days thereafter.

[5] Cordes asserts that Gray and Heeringa are accruing double daily rent as holdovers pursuant to WIS. STAT. § 704.27.  Gray and Heeringa, however, assert that monthly rent has been paid on time for August, September, and every month thereafter pursuant to the undertaking granted to stay the writ of restitution pending appeal.  The trial court's order staying eviction pending appeal means Gray and Heeringa are not holdovers but tenants, so long as they comply with the trial court's order as it relates to paying a deposit and rent.

expressed in the contractual language." *Maryland Arms Ltd. P'ship v. Connell*, 2010 WI 64, ¶22, 326 Wis. 2d 300, 786 N.W.2d 15 (quoting *Seitzinger v. Community Health Network*, 2004 WI 28, ¶22, 270 Wis. 2d 1, 676 N.W.2d 426).

¶7       This resolves what is to be done with respect to the lease at issue, but it does not address the key question of whether there was a meeting of the minds sufficient to create an enforceable Late Rent Payment Agreement. The trial court found that there was no meeting of the minds. This court does not reverse factual findings unless they are clearly erroneous. *Pindel v. Czerniejewski*, 185 Wis. 2d 892, 898, 901, 519 N.W.2d 702 (Ct. App. 1994) (affirming a trial court's finding that there was no meeting of the minds to create mutual wills). This court is to search the record "for facts to support the finding the trial court did make." *Hawes v. Germantown Mut. Ins. Co.*, 103 Wis. 2d 524, 543, 309 N.W.2d 356 (Ct. App. 1981) (quoting *First Nat'l Bank v. Nennig*, 92 Wis. 2d 518, 535, 285 N.W.2d 614 (1979)).

¶8       If this court determines that the Late Rent Payment Agreement is not an enforceable contract, there are additional issues it must reach: whether the doctrine of equitable estoppel applies and whether the lease's notice provision is void for public policy reasons. The standard of review is de novo for both. "In general, when the facts are undisputed, or when the facts are disputed and the [trial] court's factual findings are not clearly erroneous, this court reviews the application of equitable estoppel de novo." *Affordable Erecting, Inc. v. Neosho Trompler, Inc.*, 2006 WI 67, ¶21, 291 Wis. 2d 259, 715 N.W.2d 620. Not only is the interpretation of a contract a question of law, *Yauger v. Skiing Enters., Inc.*, 206 Wis. 2d 76, 80, 557 N.W.2d 60 (1996), so is "the application of public policy considerations to a contract." *Northern States Power Co. v. National Gas Co.*, 2000 WI App 30, ¶7, 232 Wis. 2d 541, 606 N.W.2d 613.

**DISCUSSION**

¶9      In this case, some of the underlying facts are undisputed:  there was a residential lease, the tenants were late in paying their July rent, a notice to cure or quit was served by the landlord, and the tenants made certain payments after receipt of that notice.  There is, however, a disputed material fact:  whether there was a meeting of the minds to enter into the Late Rent Payment Agreement as a fully integrated agreement.  The trial court's factual finding that there was no meeting of the minds, and thus no enforceable contract, is not clearly erroneous.  Accordingly, this court concludes that the Late Rent Payment Agreement is not an enforceable contract.  Finally, reviewing de novo the issues of whether equitable estoppel applies and whether the lease's notice provision was contrary to public policy, this court agrees with the trial court on both issues and affirms the order for eviction.

### I.      The Late Rent Payment Agreement is not an enforceable contract.

¶10      Gray and Heeringa assert that after they received the notice from Cordes, the two sides entered into a new contract that allowed them to pay their July rent and late fee by July 16—later than the date required by Cordes's notice—to cure the late payment.  Cordes vigorously disputes that the parties entered into any such agreement, asserting that several steps needed to be undertaken before she would sign and enter into the Late Rent Payment Agreement.  Two of those steps did not occur:  neither affidavit was signed by the tenants.

¶11      "The burden of establishing the existence of a contract is on the person [or in this case, persons] attempting to recover for its breach."  *Household Utils., Inc. v. Andrews Co.*, 71 Wis. 2d 17, 28, 236 N.W.2d 663 (1976).  Thus,

6

Gray and Heeringa must not only show that the essential elements of an enforceable contract exist ("offer, acceptance, and consideration," ***Runzheimer Int'l, Ltd. v. Friedlen***, 2015 WI 45, ¶20, 362 Wis. 2d 100, 862 N.W.2d 879), but that "there had been the 'meeting of the minds' between the parties which is required to establish the existence of a contract." ***Household Utils.***, 71 Wis. 2d at 29. It is this last requirement upon which this appeal hinges.

¶12     On its face, even despite the lack of Cordes's signature,[6] the Late Rent Payment Agreement appears to satisfy all the necessary elements for a contract:  offer, acceptance and consideration. Gray and Heeringa argue that should be the end of the analysis and that the trial court erred when it considered parol evidence at the trial to determine if there was a true meeting of the minds. They are incorrect.

¶13     The trial court looked to parol evidence after finding that the written agreement was not intended to be final and complete but rather a partial integration of the parties' agreement. "[T]he creation of an enforceable agreement is usually predicated on the language used in the contract and the *expressed* intentions of the parties." ***Kernz v. J.L. French Corp.***, 2003 WI App 140, ¶21, 266 Wis. 2d 124, 667 N.W.2d 751. "Whether the parties reached the necessary

---

[6] Gray and Heeringa argue that the Late Rent Payment Agreement need not be signed by Cordes so long as it reflects an offer, acceptance, and consideration. *See **Chudnow Constr. Corp. v. Commercial Disc. Corp.***, 48 Wis. 2d 653, 657, 180 N.W.2d 697 (1970); ***Consolidated Papers, Inc. v. Dorr-Oliver, Inc.***, 153 Wis. 2d 589, 599, 451 N.W.2d 456 (Ct. App. 1989). Therefore, they assert Cordes's nonsigning is not a bar to the enforceability of the Late Rent Payment Agreement. They ignore the fact (found by the trial court) that Cordes did not sign it precisely *because* there was no meeting of the minds. Accordingly, this court will not address the lack of signature and its relevance to enforceability. *See **Gross v. Hoffman***, 227 Wis. 296, 300, 277 N.W. 663 (1938) (only dispositive issues need be addressed).

agreement … depends upon the parties' expression of intention." ***Goossen v. Estate of Standaert***, 189 Wis. 2d 237, 246, 525 N.W.2d 314 (Ct. App. 1994).

¶14     The parol evidence rule bars the use of extrinsic evidence of prior written or oral agreements to contradict the terms of a contract "[w]hen the parties to a contract embody their agreement in writing and intend the writing to be the final expression of their agreement." ***Federal Deposit Ins. Corp. v. First Mortg. Invs.***, 76 Wis. 2d 151, 156, 250 N.W.2d 362 (1977).  The issue of "integration" is where this case rises and falls.  Our supreme court has made clear that extrinsic evidence should *always* be considered to determine whether a document reflects a fully integrated agreement or meeting of the minds:

> If a writing is shown to be only a partial integration of the agreement reached by the parties, it is proper to consider parol evidence which establishes the full agreement, subject to the limitation that such parol evidence does not conflict with the part that has been integrated in writing.  Thus "[p]arol evidence is always admissible with respect to the issue of integration, that is, parol evidence is admissible to show whether the parties intended to assent to the writing as the final and complete (or partial) statement of their agreement."

***Dairyland Equip. Leasing, Inc. v. Bohen***, 94 Wis. 2d 600, 606-08, 288 N.W.2d 852 (1980) (citations omitted).

¶15     At trial, Cordes testified that she never came to an agreement with the tenants on the Late Rent Payment Agreement; there was no meeting of the minds.  That Agreement was a part of her offer, but only a part.  Cordes required the entire offer, including the affidavits, to be accepted in order to enter an agreement.  Once the lack of a fully integrated document was raised, the trial court did not err when it looked to this testimony and the Facebook messages that encapsulated the terms and conditions between the parties to assess whether the

Late Rent Payment Agreement was a fully integrated document that contained the true agreement between the parties. The trial court was required to analyze this evidence.

¶16 There is no doubt that there was no meeting of the minds. There is no doubt that the trial court properly found that the Late Rent Payment Agreement was "not in effect" because, as that court stated: "there was no meeting of the minds, the landlord had different terms in mind than the tenants who had no intention of signing the required affidavits and did not in fact sign them as required to get the extension on rent deadline."

¶17 Accordingly, the Late Rent Payment Agreement is not an enforceable contract. That does not end the discussion, though, because Gray and Heeringa raise two alternative arguments to allow them to continue their tenancy.

**II. Equitable estoppel is not applicable.**

¶18 Gray and Heeringa contend that they relied on Cordes's verbal and written extension (reflected in the Late Rent Payment Agreement) of the deadline for payment of their July rent as well as Cordes's acceptance of their late rent payments to their detriment such that they did not timely cure their late payment in accordance with the eviction notice. Thus, they assert, Cordes is equitably estopped from evicting them for the late rent payment. The trial court disagreed and held that there was a "lack of action to the tenant's detriment" and that the "[r]ent payment made on July 14 was already owed to the landlord and was not made, to their detriment."

¶19 Equitable estoppel may be applied in landlord tenant circumstances to prohibit the enforcement of a lease. *Walters*, 282 Wis. 2d 176, ¶11 n.2. It is

"not limited to claims brought in equity; it may also apply to 'preclude the assertion of rights and liabilities under a note or contract.'" *Id.* (quoting *Gabriel v. Gabriel*, 57 Wis. 2d 424, 428, 204 N.W.2d 494 (1973)). Gray and Heeringa have the burden to prove the three elements of equitable estoppel: "(1) action or inaction which induces, (2) good faith reliance by another, (3) to that person's detriment." *Gillespie v. Dunlap*, 125 Wis. 2d 461, 466, 373 N.W.2d 61 (Ct. App. 1985); *see also Randy A.J. v. Norma I.J.*, 2004 WI 41, ¶26, 270 Wis. 2d 384, 677 N.W.2d 630.

¶20    Both parties appear to concede that there was an action, presumably Cordes's proposal reflected in the documents she sent to Gray and Heeringa indicating that she would accept payment as late as July 16 to make up the July rent and late fees and not commence an eviction. The parties likewise seem to agree that the tenants relied on the proposed payment schedule because the sole element briefed in the appeal is whether the tenants relied on the later deadline *to their detriment.* The trial court also focuses on this element.

¶21    This court, however, does not agree that there was *good faith* reliance on that proposed deadline. Gray and Heeringa were clearly on notice that Cordes would only agree to the terms of the Late Rent Payment Agreement if they did three things: sign the Agreement, sign the affidavits, and make the late payments by July 16. Gray and Heeringa did not sign the affidavits, and in their Facebook posts and testimony, they indicated they had no intention of signing those affidavits. By not signing, how could they rely upon the statements of Cordes? They clearly could not rely upon the Late Rent Payment Agreement because it is not a contract. In fact, Cordes expressly informed Heeringa on July 9, 2022—before the deadline for payment found in Cordes's notice—that a failure to fulfill all the parts of her proposed agreement would result in an eviction

10

the next day. Reliance on the offer of a later deadline in the face of such explicit communication cannot be said to have been in good faith. It is purely illusory. The tenants cannot establish this element of equitable estoppel; to the extent the trial court found good faith reliance, this court concludes that the finding was clearly erroneous and that Cordes is not equitably estopped from enforcing the terms of the lease to evict Gray and Heeringa.[7]

### III. The lease's three-day notice provision is not void as against public policy.

¶22 As their last argument, Gray and Heeringa contend that the notice provided by Cordes was not sufficient to terminate the lease because it failed to state a date of termination contrary to the provisions of WIS. STAT. § 704.17(4) and that the "confusing" lease's provision for service of an eviction notice and its three-day notice provision is violative of the statutes and contrary to public policy established to protect residential tenants.[8] They concede that WIS. STAT. § 704.17(5)(a) does permit parties to vary terms in a lease longer than one year,

---

[7] In addition to its conclusion that there was no good faith reliance, this court holds that the trial court's finding that the tenants failed to establish that they acted to their detriment was not clearly erroneous, which provides another reason for affirming the trial court's ruling on this issue. The trial court's finding was apparently based on the fact that Gray and Heeringa did not act "to their detriment" when making the final payment of their July rent on July 14 because it was "already owed to the landlord." Although Gray and Heeringa argue that their *delay* in making that payment on July 14 (rather than on an earlier date) was the action they took to their detriment, the trial court was in the best position to hear the witnesses' testimony on this subject. *See Pindel v. Czerniejewski*, 185 Wis. 2d 892, 898-99, 519 N.W.2d 702 ("When, however, the trial court acts as the finder of fact it is the ultimate arbiter of both the credibility of the witnesses and the weight to be given to each witness' testimony." (citation omitted)).

[8] Cordes asserts that this issue was not raised in the trial court and is thus forfeited on appeal because "those issues not presented to the trial court will not be considered for the first time at the appellate level." *See Shadley v. Lloyds of London*, 2009 WI App 165, ¶25, 322 Wis. 2d 189, 204, 776 N.W.2d 838. However, for the sake of completeness, this court will consider the issue. *See Pfeil v. Pfeil*, 115 Wis. 2d 502, 508, 341 N.W.2d 699 (Ct. App. 1983).

even the thirty-day time period for curing a lease defect, but they still assert that the three-day notice in their lease violates Wisconsin's public policy to give tenants "one meaningful chance to catch up their rent before getting evicted."

¶23    "Wisconsin courts have long recognized the importance of freedom of contract and have endeavored to protect the right to contract." *Watts v. Watts*, 137 Wis. 2d 506, 521, 405 N.W.2d 303 (1987).  "As a general rule, [appellate courts] will seek to enforce contracts deliberately made by the parties rather than set them aside." *Dawson v. Goldammer*, 2003 WI App 3, ¶6, 259 Wis. 2d 664, 657 N.W.2d 432.  Thoroughly integrated into the principle of freedom of contract is that, at its core, "individuals should have the power to govern their own affairs without governmental interference." *Merten v. Nathan*, 108 Wis. 2d 205, 211, 321 N.W.2d 173 (1982).  Courts are thus bound to protect the freely contracting parties' "justifiable expectations and the security of transactions" by "ensuring that the promises will be performed." *Id.*

¶24    The lease at issue is not ambiguous, nor is it unduly confusing with respect to service of an eviction notice.  True, the language could be clearer; that is often the case when parties rely upon typically non-Wisconsin internet sites or vendors to draft leases or other legal documents.  Service of a late-rent notice is covered by WIS. STAT. § 704.21.  Cordes complied with that statute by personally giving the notice to Gray, and there is no argument to the contrary.  This court is not persuaded by Gray and Heeringa's vague and muted argument that the question of service could be confusing under the lease.

¶25    Next, the tenants' concession that the statutory notice period can be varied by a lease longer than one year, like theirs, is telling.  The legislature has expressly allowed termination provisions in such leases that are "contrary" to the

other statutory provisions. WIS. STAT. § 704.17(5)(a). The parties mutually agreed to a three-day time period in which to cure a late rent payment (excluding weekends and holidays), which varies from the default thirty-day notice provided in § 704.17(3)(a), and they were free to bargain and make that agreement.

¶26 Finally, Gray and Heeringa provide no support for their argument that the lease—with its legally allowed and mutually agreed upon, altered-termination provision—is contrary to public policy. This lease was voluntarily entered into by parties who were entitled to freely bargain for their rights. Even in the primary case cited by the tenants, *Baierl v. McTaggart*, 2001 WI 107, ¶12, 245 Wis. 2d 632, 629 N.W.2d 277, our supreme court recognized that "[a]s a general matter, Wisconsin courts seek to enforce contracts deliberately made by the parties rather than set them aside." *See also Dawson*, 259 Wis. 2d 664, ¶6. This concept goes back well over a century. *See Burstein v. Phillips*, 154 Wis. 591, 594, 143 N.W. 679 (1913). While it is true that the "preference for enforcing bargains may give way where a contract violates a statute, rule of law, or public policy," *Dawson*, 259 Wis. 2d 664, ¶6, no such violations are present here. This court is fully cognizant that unconscionable contracts or contracts bargained for where all the leverage is on one side are contrary to public policy, but other than saying that allowing this landlord to evict these tenants is contrary to "law, equity and common sense," Gray and Heeringa do not present any meritorious argument affording them the ability to void provisions they bargained for in good faith.

¶27 Thus, the tenants' final argument against the trial court's eviction order fails. That does not, however, mean that Gray and Heeringa must vacate the premises upon the date of this opinion. Nor does it mean that Cordes is entitled to double rent on the incorrect theory that the tenants have "held over." Rather, this

13

court is remanding the matter back to the trial court to make the necessary findings with respect to when to lift the stay under WIS. STAT. § 799.445 and other matters.

## CONCLUSION

¶28    Sadly, in a case where the parties began as friends, the contractual relationship between tenants Gray and Heeringa and landlord Cordes has failed. After the tenants were late on their July rent, they failed to cure that default by either fulfilling all requirements of an offered resolution by the landlord or by paying the late rent as required by the lease. The trial court's finding that the Late Rent Payment Agreement was not an enforceable contract because it did not reflect a meeting of the minds was not clearly erroneous, and it was appropriate to consider parol evidence in making that determination. This court further concludes that the tenants did not establish equitable estoppel and that the underlying lease provisions are not ambiguous, violative of the statutes, or contrary to public policy. Therefore, this court affirms the trial court's order of eviction and remands this matter to the trial court.

*By the Court.*—Order affirmed and cause remanded.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.